Affirmed and Memorandum Opinion filed February 27, 2007








Affirmed and Memorandum Opinion filed February 27, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00110-CR

____________

 

TROYKISIAN ANTON WINGATE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 1035659

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Troykisian Anton Wingate, was charged by
indictment with unlawful labeling.[1] 
The indictment also contained two enhancement paragraphs that alleged previous
convictions for possession of a controlled substance.  A jury convicted
appellant as charged in the indictment.  Appellant entered a plea of Atrue@ to the
enhancement allegations, and he was subsequently sentenced to confinement in
the state penitentiary for a term of three years and a fine of $2,000.  In his
sole point of error, appellant contends the evidence is legally insufficient to
support the jury=s verdict.  We affirm.

On July 29, 2005, Houston police officer Jimmy Williams was
patrolling the area around the 3400 block of West Little York.  He decided to
check a convenience store where numerous complaints had been made by the
manager about loitering and trespassing.  Three men caught Williams= attention as he
drove up.  Appellant was seated on the sidewalk outside the store, surrounded
by numerous, hand-labeled, compact disc recordings, Aas if to sell
them.@  Williams had
observed appellant at the store before, and had warned him he could not hang
out there and could not sell CDs there.  Tired of appellant=s ignoring his
warnings, Williams arrested him.  Williams gathered all the CDs.  The CDs were
not ones produced with a commercial label.  Rather, the CDs were recordable
discs with handwritten labels showing only the names of different popular
performers.  The labels did not include the name and the address of the
manufacturer.

Appellant contends the evidence is legally insufficient
because Williams admitted he never saw appellant sell a CD on the day of his arrest. 
Moreover, appellant claims there is little or no circumstantial evidence of
sales because Williams acknowledged he did not see a price list, signs, or
receipts of sale.








In assessing the legal sufficiency of the evidence, the
reviewing court considers all of the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  Threadgill
v. State, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)).  The Jackson standard of review
A>gives full play to
the jury's responsibility fairly to resolve conflicts in the evidence, to weigh
the evidence, and to draw reasonable inferences from the evidence.=@ Id. (quoting
Garcia v. State, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001)).  The jury is
the exclusive judge of the credibility of witnesses and of the weight to be
given testimony, and it is also the exclusive province of the jury to reconcile
conflicts in the evidence.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.
Crim. App. 2000).  When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim.
App. 1997).

Section 35.94 of
the Business and Commerce Code provides:

a) A
person commits an offense if, for commercial advantage or private financial
gain, the person knowingly advertises, offers for sale, sells, rents, or
transports, causes the sale, resale, rental, or transportation of, or possesses
for any of these purposes a recording if the outside cover, box, or jacket of
the recording does not clearly and conspicuously disclose the actual name and
address of the manufacturer and the name of the performer or group.

Tex. Bus. & Com. Code Ann. ' 35.94(a) (Vernon
2002).  As charged in the indictment, the State was required to prove appellant
either sold the CDs at issue or possessed them for sale.

While the State offered no direct evidence that appellant
was selling the CDs at the time of his arrest, it offered substantial
circumstantial evidence that he possessed them for that purpose at the time of
his arrest.  See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App.
2004) (holding intent may be inferred from circumstantial evidence such as
acts, words, and the conduct of the actor).








Appellant was in possession of 126 CDs which were spread on
the sidewalk in what appeared to be a display.  Each CD was contained in a
blank jacket or Asleeve@ that was
hand-labeled with a marker.  The label contained only the name of a popular
performer, and did not include the actual name and address of the manufacturer
as required by the statute.  When appellant was arrested, he spontaneously said
to Williams Athat he sells CDs instead of crack.@  Williams further
testified he had seen appellant make a sales transaction on at least one other
occasion, at which time he warned appellant about selling CDs outside the
convenience store. 

The sole defense
witness, Zachary Payne, testified he believed appellant had been warned before
by law enforcement.  Payne explained that he and appellant Apromoted@ the CDs in
question by giving them away for free to whomever wanted them.  Payne admitted
that they had been doing this for about a year.  Payne stated they promoted the
CDs at the convenience store approximately four times a week, and twice a week
at a local pool hall.  Payne and appellant were friends with the rappers who
created the CDs.  Payne stated their rapper friends formed Big Body Click
Entertainment.  Big Body Click rappers would take popular performers= songs, change
them, and add their own rap.[2] 
Payne testified he and appellant did these promotions and gave the CDs away so Ahopefully they
land in the right person=s hands so we can get a break one day,
make it in the entertainment industry.@  They hoped to
get a break, make their rapper friends rich, and enjoy the trickle down
benefits.  Payne further testified on cross-examination:

Q.   What does Big Body Click do once they=ve altered this prerecorded music?

A.   They sell it and they give us something to sell it and basically
that=s it.

Q.   So, they give y=all some to sell.  What do you do when you get the stuff from them?

A.   Issue it out.

Q.   What does that mean?

A.   Pass it out.

When
asked if Big Body Click had an agreement with Missy Elliott or Ludacris to use
their licensed music, Payne replied AI=m not sure.  Not
to my knowledge.@








After reviewing the evidence in the light most favorable to
the verdict, we conclude a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Accordingly, we
overrule appellant=s sole point of error and affirm the
judgment of the trial court.

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed February 27, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Tex. Bus.
& Com. Code Ann. ' 35.94 (Vernon
2002).





[2]  After Payne testified the CDs were recordings of
their friends, Payne admitted he and appellant were not friends with Missy
Elliott, Ludacris, B.B. King, or Mariah Carey, whose names were hand-labeled on
the sleeves and who were among the performers= music used by Big Body Click Entertainment.