NUMBER 13-08-00510-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ALFRED ISASSI, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 105th District Court of Kleberg County, Texas.


 


O P I N I O N



Before Chief Justice Valdez and Justices Garza and Vela


Opinion by Justice Garza



 Appellant, Alfred Isassi, was convicted of two counts of improper influence, a class
A misdemeanor. See Tex. Penal Code Ann. § 36.04 (Vernon 2003). His sentence of one
year's confinement in the Kleberg County Jail was suspended, and he was placed on
community supervision for six months. Isassi now appeals, contending that the evidence
adduced at trial was legally and factually insufficient to support his conviction. Because we
find the evidence legally insufficient, we reverse and render a judgment of acquittal.

I. Background

 On August 5, 2005, Anna Linda Gonzalez ran a red light in Kingsville, Texas. 
Kleberg County Constable Rafael "Ralph" Campos pursued Gonzalez with his vehicle's
emergency lights flashing, but Gonzalez did not stop. Instead, she drove to her home,
went inside, and refused to come out. While inside, Gonzalez called her nephew, Isassi,
who was then serving as Kleberg County Attorney. Isassi advised Gonzalez to cooperate
with Constable Campos. Gonzalez did cooperate; Constable Campos then arrested her
and transported her to the county jail.

 At the county jail, Justice of the Peace Esequiel "Cheque" de la Paz ordered
Gonzalez released pursuant to a $500 personal recognizance bond. Upon her release,
Gonzales was given three documents. The first was a notice commanding her to report
immediately to the Pre-Trial Services office of the Kleberg County Community Supervision
and Corrections Department. The second was a document stating in part that "ALL
OFFENDERS ARRESTED AND CHARGED WITH ANY FELONY OFFENSE, BY ORDER
OF THE JUDGE OF THE 105TH JUDICIAL DISTRICT AND COUNTY COURT AT LAW
ARE HEREBY REQUIRED TO PARTICIPATE IN A PRETRIAL INTERVENTION
PROGRAM." This second document, like the first, stated that Gonzalez must report
immediately following her release to the Kleberg County Community Supervision and
Corrections Department. The second document also stated that "FAILURE TO REPORT
TO OUR OFFICE MAY RESULT IN A BOND FORFEITURE WITH A WARRANT BEING
ISSUED FOR YOUR ARREST." The third document received by Gonzalez directed her
to appear before the "COUNTY COURT AT LAW / 105TH DISTRICT COURT" on
September 8, 2005. This third document noted that Gonzalez was charged with evading
arrest with a vehicle, a state jail felony. See id. § 38.04(a), (b)(1) (Vernon 2003). None
of the three documents were signed by the Justice of the Peace or a District Court Judge. 
Gonzalez neither reported to the probation office nor appeared in court as directed in the
documents.

 Several days later, Isassi telephoned Maria Elena Hernandez, pre-trial bond
coordinator for the 105th Judicial District. Hernandez testified that "[Isassi] called to let me
know that this person, Anna Linda Gonzalez that had been arrested on evading arrest with
a vehicle, a felony charge and that she did not need to report to our office for pretrial
services." When asked by the State's attorney whether Isassi told her why Gonzalez did
not need to report, Hernandez replied: "Well, he said that--that the--that the [ar]rest was
done by Constable Ralph Campos and [there] was an investigation on him at the time due
to another incident, another arrest on, I guess, another individual and that the case was
going to get rejected." Hernandez further testified that Isassi told her that he already had
spoken with the District Attorney's office and that the case against Gonzalez "was going
to be rejected." (1)

 On or about September 1, 2005, Isassi called Aida Treviño, an Assistant District
Attorney for Kleberg County. At trial, Treviño described their conversation:

He [Isassi] said, "Do you have a--do you happen to have a case on Anna
Linda--or Anna Gonzalez?" And I was like, "Well, let me look it up." And
. . . I said, "Yes, it's a pending case." And so he said, "Well,"--he says,
"Ralph Campos is the one that arrested her." I said, "Yeah, that's what I'm
showing. It's still pending." He says, "Well, did you know that [First
Assistant District Attorney] Mark Skurka has a pending investigation--an
open pending investigation on Ralph Campos?" And I said, "No, I didn't
know that." He says, "Yeah." He goes, "And they're not going to prosecute
the case." I was like, "Okay." I said, "Well, let me go ahead and check with
him." I said, "If that's the case, then I'll go ahead and--and dump the case,"
because--and I remember telling him, I was like, "One less case I have to
deal with." I was like, "You know how much work there is up here." So I was
like, "We'll go ahead and dump it as soon as I--I get that."


 On September 13, 2005, at the direction of Hernandez, pre-trial officer Ruth
Jimenez sent a letter to Gonzalez advising her that she is required to "report and submit
to pre-trial supervision pending charges until further Order of the Court." Jimenez testified
that she received a telephone call from Isassi on September 16, 2005. Isassi "indicated
that there could be a possibility that the case [against Gonzalez] would be dismissed," and
he asked if Gonzalez "still needed to report" to pre-trial services. Jimenez "advised [Isassi]
at that point that [Gonzalez] would still need to report because it was standard procedure
and once we had documentation, then, of course, then we would close the case up at that
point." In his various telephone conversations, Isassi did not advise Hernandez, Treviño,
or Jimenez of his relation to Gonzalez.

 Gonzalez reported to pre-trial services later on September 16, 2005. At that time,
Gonzalez received and signed a document entitled "Conditions of Bail Pending Trial"
commanding her to appear again in court on October 6, 2005. Ultimately, Gonzalez was
indicted, but the case against her was dismissed on July 24, 2006 pursuant to a plea
agreement in another case involving Gonzalez's service on a Kleberg County grand jury.

 Isassi was indicted on July 19, 2007 on one count of abuse of official capacity with
respect to his communications with Treviño, and three counts of improper influence with
respect to his communications with Treviño, Hernandez, and Jimenez. See id. §§ 36.04,
39.02(a)(1) (Vernon 2003). After a trial on July 7, 2008, the trial court directed a not guilty
verdict on Counts I (alleging abuse of official capacity) and IV (alleging improper influence
with respect to Jimenez). The jury returned a guilty verdict on Counts II (alleging improper
influence with respect to Treviño) and III (alleging improper influence with respect to
Hernandez). The trial court then sentenced Isassi to one year in county jail, suspended
the sentence, and placed Isassi on community supervision for six months. See Tex. Code
Crim. Proc. Ann. art. 42.12, § 3 (Vernon Supp. 2008). This appeal followed.

II. Discussion

 Isassi argues by one issue that the evidence adduced at trial was legally and
factually insufficient to support his conviction. Isassi specifically contends that the State
failed to prove: (1) that he intended to influence Treviño or Hernandez on the basis of
"prohibited considerations"; (2) that his discussions with Treviño or Hernandez took place
in the context of an "adjudicatory proceeding"; or (3) that Hernandez had any official
discretion with respect to the subject of his communication. See Tex. Penal Code Ann. §
36.04.

A. Standard of Review

 In conducting a legal sufficiency review, we consider the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Sanders v. State, 119 S.W.3d
818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier
of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts." Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). We
are not required to determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we must
presume that the trier of fact resolved any such conflict in favor of the prosecution, and we
must defer to that resolution. State v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
"If the evidence establishes precisely what the State has alleged, but the acts that the
State has alleged do not constitute a criminal offense under the totality of the
circumstances, then that evidence, as a matter of law, cannot support a conviction." 
Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

 Legal sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). 
Under a hypothetically correct jury charge, Isassi committed the offense of improper
influence if he: (1) privately addressed a representation, entreaty, argument, or other
communication; (2) to any public servant who exercises or will exercise official discretion
in an adjudicatory proceeding; (3) with an intent to influence the outcome of the proceeding
on the basis of considerations other than those authorized by law. Tex. Penal Code Ann.
§ 36.04. A person acts intentionally with respect to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result. Id. § 6.03(a)
(Vernon 2003).

B. Analysis

 We address first whether the State produced legally sufficient evidence to establish
that Isassi had "an intent to influence the outcome of [a] proceeding on the basis of
considerations other than those authorized by law." See id. § 36.04. This phrase is not
precisely defined in the penal code, nor have we found any case law interpreting the
phrase. We will, therefore, construe it "according to the fair import of [its] terms, to
promote justice and effect the objectives of the [penal] code." Id. § 1.05(a) (Vernon 2003). 
Those objectives include "giv[ing] fair warning of what is prohibited" and "safeguard[ing]
conduct that is without guilt from condemnation as criminal." Id. § 1.02(2), (4) (Vernon
2003).

 The evidence adduced at trial established that Isassi contacted both Treviño and
Hernandez in order to advise them that Constable Campos was under investigation, and
that the First Assistant District Attorney did not intend to prosecute Gonzalez for this
reason. There was no evidence that Isassi offered to do anything, either in his private
capacity or in his capacity as County Attorney, in exchange for a favorable result in his
aunt's case. Nor was there any evidence that Isassi gave any information to Treviño and
Hernandez that those individuals could not lawfully utilize in determining how to exercise
their official discretion.

 The State asserts on appeal that "Isassi attempted to influence [Treviño] . . . by
implying that her boss had authorized her to dump his aunt's case early, before anyone
would have paid any attention to her doing so." The State also notes that Isassi "informed
[Hernandez] that [Gonzalez] did not need to report [to pre-trial services] because the case
was to be rejected." However, the State did not--at trial or on appeal--explain how Isassi
attempted to exercise influence on the basis of "considerations other than those authorized
by law." The State directs us to no law, and we find none, indicating that one may not
legally inform a prosecutor or pre-trial bond coordinator that a particular case will be
rejected by the relevant prosecuting authority. Moreover, the State does not establish that
the decision by the District Attorney's office of whether to prosecute Gonzalez was an
improper basis for Treviño and Hernandez to use in carrying out their official duties. The
intent of the District Attorney to drop the case against Gonzalez was indeed a factor that
Treviño and Hernandez were clearly authorized by law to consider in making official
decisions regarding Gonzalez's case.

 Isassi's position as Kleberg County Attorney and his failure to disclose his
relationship with Gonzalez may have given his communications with Treviño and
Hernandez an aura of impropriety. However, the fact remains that Isassi did nothing that
a private citizen could not do--he merely advised Treviño and Hernandez that the case
against his aunt was weak and would not be prosecuted. To hold Isassi criminally liable
for this behavior would be to obscure the line between routine communications with law
enforcement officials and illegal attempts to coerce those officials to make decisions based
on improper considerations. See id. § 1.02(2). The latter act is reprehensible and
deserving of punishment when it occurs, but no rational trier of fact could have found
beyond a reasonable doubt that Isassi in fact committed such an act here. See Sanders,
119 S.W.3d at 820. 

 We conclude that the State produced no evidence indicating that Isassi intended to
influence the outcome of Gonzalez's case "on the basis of considerations other than those
authorized by law." See id. § 36.04. Accordingly, the evidence was legally insufficient to
support Isassi's conviction. (2) Isassi's issue is sustained.

III. Conclusion

 We reverse the judgment of the trial court and render a judgment of acquittal.


 

 

 DORI CONTRERAS GARZA,

 Justice


Publish.

Tex. R. App. P. 47.2(b).

Opinion delivered and filed

this the 30th day of July, 2009.
1. First Assistant District Attorney Mark Skurka testified at trial that he had not talked directly to Isassi
about Gonzalez's case.
2. Because the evidence was legally insufficient to support a finding that Isassi "inten[ded] to influence
the outcome of the proceeding on the basis of considerations other than those authorized by law," we need
not address whether the evidence was sufficient to establish (1) that his communications took place in the
context of an "adjudicatory proceeding" or (2) that Hernandez "exercise[d] or [would have] exercise[d] official
discretion" in such a proceeding. See Tex. Penal Code Ann.§ 36.04 (Vernon 2003); Tex. R. App. P. 47.1. 
Moreover, because we find the evidence legally insufficient, we do not address the question of factual
sufficiency. See Tex. R. App. P. 47.1; Williams v. State, 235 S.W.3d 742, 746 n.3 (Tex. Crim. App. 2007).