NUMBER 13-08-00510-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

ALFREDO ISASSI,                                                                        Appellant,

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 105th
District Court

of Kleberg County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION ON
REMAND

 

Before Chief Justice
Valdez and Justices Garza and Vela

Memorandum Opinion on
Remand by Justice Garza

 

            Appellant, Alfred Isassi,
was convicted of two counts of improper influence, a class A misdemeanor.  See
Tex. Penal Code Ann. § 36.04
(Vernon 2003).  In 2009, we concluded that the evidence adduced at trial was
legally insufficient to support the jury’s finding that Isassi acted “with the
intent to influence the outcome of the proceeding on the basis of
considerations other than those authorized by law.”  Isassi v. State,
No. 13-08-00510-CR, 2009 Tex. App. LEXIS 5822, at *9-12 (Tex. App.–Corpus
Christi July 30, 2009).  The court of criminal appeals reversed.  No.
PD-1347-09, 2010 Tex. Crim. App. LEXIS 1287, at *9-31 (Tex. Crim. App. Oct. 6,
2010).  We now consider Isassi’s other challenges to the sufficiency of the
evidence supporting his conviction.  We affirm.

I.  Background

            In our 2009 opinion, we
described the factual background of the case as follows:

On August 5, 2005, Anna Linda Gonzalez
ran a red light in Kingsville, Texas.  Kleberg County Constable Rafael “Ralph”
Campos pursued Gonzalez with his vehicle’s emergency lights flashing, but
Gonzalez did not stop.  Instead, she drove to her home, went inside, and
refused to come out.  While inside, Gonzalez called her nephew, Isassi, who was
then serving as Kleberg County Attorney.  Isassi advised Gonzalez to cooperate
with Constable Campos.  Gonzalez did cooperate; Constable Campos then arrested
her and transported her to the county jail.

 

At the county jail, Justice of the
Peace Esequiel “Cheque” de la Paz ordered Gonzalez released pursuant to a $500
personal recognizance bond.  Upon her release, Gonzale[z] was given three
documents.  The first was a notice commanding her to report immediately to the
Pre-Trial Services office of the Kleberg County Community Supervision and
Corrections Department.  The second was a document stating in part that “ALL
OFFENDERS ARRESTED AND CHARGED WITH ANY FELONY OFFENSE, BY ORDER OF THE JUDGE
OF THE 105TH JUDICIAL DISTRICT AND COUNTY COURT AT LAW ARE HEREBY REQUIRED TO
PARTICIPATE IN A PRETRIAL INTERVENTION PROGRAM.”  This second document, like
the first, stated that Gonzalez must report immediately following her release
to the Kleberg County Community Supervision and Corrections Department.  The
second document also stated that “FAILURE TO REPORT TO OUR OFFICE MAY RESULT IN
A BOND FORFEITURE WITH A WARRANT BEING ISSUED FOR YOUR ARREST.”  The third
document received by Gonzalez directed her to appear before the “COUNTY COURT
AT LAW / 105TH DISTRICT COURT” on September 8, 2005.  This third document noted
that Gonzalez was charged with evading arrest with a vehicle, a state jail
felony.  None of the three documents were signed by the Justice of the Peace or
a District Court Judge.  Gonzalez neither reported to the probation office nor
appeared in court as directed in the documents.

 

Several days later, Isassi telephoned
Maria Elena Hernandez, pre-trial bond coordinator for the 105th Judicial
District.  Hernandez testified that “[Isassi] called to let me know that this
person, Anna Linda Gonzalez that had been arrested on evading arrest with a
vehicle, a felony charge and that she did not need to report to our office for
pretrial services.”  When asked by the State’s attorney whether Isassi told her
why Gonzalez did not need to report, Hernandez replied:  “Well, he said that—that
the—that the [ar]rest was done by Constable Ralph Campos and [there] was an
investigation on him at the time due to another incident, another arrest on, I
guess, another individual and that the case was going to get rejected.”  Hernandez
further testified that Isassi told her that he already had spoken with the
District Attorney’s office and that the case against Gonzalez “was going to be
rejected.”

 

On or about September 1, 2005, Isassi
called Aida Treviño, an Assistant District Attorney for Kleberg County.  At
trial, Treviño described their conversation:

 

He [Isassi] said, “Do you have a—do
you happen to have a case on Anna Linda—or Anna Gonzalez?”  And I was like, “Well,
let me look it up.”  And . . . I said, “Yes, it’s a pending
case.”  And so he said, “Well,” —he says, “Ralph Campos is the one that
arrested her.”  I said, “Yeah, that’s what I’m showing.  It’s still pending.”  He
says, “Well, did you know that [First Assistant District Attorney] Mark Skurka
has a pending investigation—an open pending investigation on Ralph Campos?”  And
I said, “No, I didn’t know that.”  He says, “Yeah.”  He goes, “And they’re not
going to prosecute the case.”  I was like, “Okay.”  I said, “Well, let me go
ahead and check with him.”  I said, “If that's the case, then I'll go ahead and—and
dump the case,” because—and I remember telling him, I was like, “One less case
I have to deal with.”  I was like, “You know how much work there is up here.”  So
I was like, “We'll go ahead and dump it as soon as I—I get that.”

 

On September 13, 2005, at the
direction of Hernandez, pre-trial officer Ruth Jimenez sent a letter to
Gonzalez advising her that she is required to “report and submit to pre-trial
supervision pending charges until further Order of the Court.”  Jimenez
testified that she received a telephone call from Isassi on September 16, 2005.
 Isassi “indicated that there could be a possibility that the case [against
Gonzalez] would be dismissed,” and he asked if Gonzalez “still needed to report”
to pre-trial services.  Jimenez “advised [Isassi] at that point that [Gonzalez]
would still need to report because it was standard procedure and once we had
documentation, then, of course, then we would close the case up at that point.”
 In his various telephone conversations, Isassi did not advise Hernandez,
Trevino, or Jimenez of his relation to Gonzalez.

 

Gonzalez reported to pre-trial
services later on September 16, 2005.  At that time, Gonzalez received and
signed a document entitled “Conditions of Bail Pending Trial” commanding her to
appear again in court on October 6, 2005.  Ultimately, Gonzalez was indicted,
but the case against her was dismissed on July 24, 2006 pursuant to a plea
agreement . . . .

 

Isassi, 2009 Tex. App. LEXIS 5822, at *1-5
(citations and footnotes omitted).  After a jury trial, Isassi was convicted of
improperly influencing Treviño and Hernandez.  See Tex. Penal Code Ann. § 36.04.  The
trial court sentenced Isassi to one year in the county jail, with the sentence
suspended and community supervision imposed for a period of six months.[1] 
See Tex. Code Crim. Proc. Ann.
art. 42.12, § 3 (Vernon 2008).

On appeal, Isassi argued that the
evidence was both legally and factually insufficient to support the jury’s
implicit findings (1) that he acted “with the intent to influence the outcome
of the proceeding on the basis of considerations other than those authorized by
law,” (2) that the communications at issue were made in the context of “an
adjudicatory proceeding,” or (3) that Hernandez was “a public servant who exercises
or will exercise official discretion” in such a proceeding.  Isassi,
2009 Tex. App. LEXIS 5822, at *6-7.  Because we found that the evidence was
legally insufficient as to Isassi’s intent, we did not address the factual
sufficiency question with respect to intent, and we did not address whether the
evidence was legally or factually sufficient to support the findings that the
communications were made in an adjudicatory proceeding or that Hernandez would
exercise official discretion in such a proceeding.  Id. at *12 n.2
(citing Tex. R. App. P. 47.1; Williams
v. State, 235 S.W.3d 742, 746 n.3 (Tex. Crim. App. 2007)).

II. 
Applicable Law and Standard of Review

In Brooks v. State, the court
of criminal appeals held that “the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt.” 
323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  Under Jackson, we consider
the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979);
see Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  We
must give deference to “the responsibility of the trier of fact to fairly
resolve conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.”  Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318-19). 
We are not required to determine whether we believe that the evidence at trial
established guilt beyond a reasonable doubt; rather, when faced with
conflicting evidence, we must presume that the trier of fact resolved any such
conflict in favor of the prosecution, and we must defer to that resolution.  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence should be
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would be one that accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Id. 
Under a hypothetically
correct jury charge, Isassi committed the offense of improper influence if he:

privately addresse[d] a
representation, entreaty, argument, or other communication to any public
servant who exercises or will exercise official discretion in an adjudicatory
proceeding with an intent to influence the outcome of the proceeding on the
basis of considerations other than those authorized by law.

 

Tex. Penal
Code Ann. § 36.04(a).  “Adjudicatory
proceeding” is defined as “any proceeding before a court or any other agency of
government in which the legal rights, powers, duties, or privileges of
specified parties are determined.”  Id. § 36.04(b).  “A
person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.”  Id. §
6.03(a) (Vernon 2003).

            When interpreting a
statute, we do so “according to the fair import of [its] terms, to promote justice
and effect the objectives of the [penal] code.” Id. § 1.05(a) (Vernon
2003).  Those objectives include “giv[ing] fair warning of what is prohibited”
and “safeguard[ing] conduct that is without guilt from condemnation as
criminal.” Id. § 1.02(2), (4) (Vernon 2003).

III.  Discussion

A.        Intent

            By his first
sub-issue on appeal, Isassi argues that the evidence was legally and factually
insufficient to establish that he intended to influence the outcome of a
proceeding “on the basis of considerations other than those authorized by
law.”  See id. § 36.04(a).  As noted, the court of criminal appeals
determined that the evidence was legally sufficient for the jury to have
reached that conclusion beyond a reasonable doubt.  See Isassi, 2010
Tex. Crim. App. LEXIS 1287, at *9-31.[2] 
In light of the court of criminal appeals’ conclusion in Brooks that the
legal sufficiency and factual sufficiency standards of review are
“indistinguishable,” 323 S.W.3d at 902, we need not conduct a separate factual
sufficiency analysis of the evidence supporting this facet of the intent
element.  Instead, we are compelled to conclude that the evidence was
sufficient to establish that Isassi intended to influence the outcome of a
proceeding “on the basis of considerations other than those authorized by
law.”  Isassi’s first sub-issue is overruled.

B.        Pending
“Adjudicatory Proceeding”

            By his second sub-issue, Isassi argues
that there was “no pending court proceeding to determine ‘any right, power,
duty or privilege’” at the time he made the communications at issue.[3]

In
addressing this sub-issue, we first note that it is unclear whether the State
was obligated to show that an adjudicatory proceeding was “pending” at that
time.  Section 36.04 of the penal code, according to its plain language, does
not strictly require that the adjudicatory proceeding be “pending” at the time
the communication is made, as Isassi claims; instead, it merely requires that
the communication be directed at “any public servant who exercises or will
exercise official discretion in an adjudicatory proceeding.”  Tex. Penal Code Ann. § 36.04(a).

Nevertheless,
even assuming that the State was under an obligation to show that an
adjudicatory proceeding was pending at the time Isassi made the allegedly
improper communications, we find that the evidence was sufficient to support
such a finding.  The indictment identified the proceeding at issue as “a
pending felony criminal charge of evading arrest or detention in a motor
vehicle against Anna Gonzalez . . . .”  It is undisputed
that Gonzalez was arrested for this offense prior to the time Isassi made his
allegedly improper entreaties to Treviño and Hernandez.  It is also undisputed
that, at that time, the district attorney’s office had not yet indicted
Gonzalez, nor had it dismissed or “no-billed” the charge against her.  During
the relevant time period, therefore, Gonzalez was in a state of legal limbo,
having not been formally charged by a grand jury of the felony offense she was
arrested for, yet still being subject to the instructions given to her by the
magistrate at the county jail following her arrest.  Those instructions,
however, were not negligible.  In three separate documents following her
release from jail, Gonzalez was informed that she was required to participate
in a pre-trial intervention program, to report to the Kleberg County Community
Supervision and Corrections Department, and to appear in court on September 8,
2005.  These instructions are evidence that a “proceeding” was under way in
which Gonzalez’s “duties” and “privileges” would be determined.  See id.
§ 36.04(b).  Although the documents were not signed by a magistrate or district
court judge, the jury did hear the following testimony of J. Manuel Bañales,
then-judge of the 105th District Court and presiding judge of the Fifth
Administrative Judicial Region:

Q. [Prosecutor]     Could you tell the
jury the procedures that have been implemented to deal with individuals when
they’ve been arrested for a felony offense in Kleberg County?

 

A. [Bañales]          Yes.  I
developed those rules [in the] late ‘80s, early ‘90s as a results of changes
made by the legislature at that time.  The whole purpose of that was to set up
a procedure that would be followed by my court as well as the County Court at
Law with regard to felony cases in which whenever a person would be arrested
and charged with any felony offense, then our probation department would
immediately make contact with the person and inform the person that if the
person posted bond, that that person would be required to report to a pretrial
officer until the case was either dismissed or it was resolved in trial in
some—in court in some form . . . .[[4]]

 

                                . . .
.

 

Q.                            When an
individual is arrested on a felony charge in this county, is a number created
in the district clerk’s office?

 

A.                            Yes, it
is.

 

Q.                            And so
that individual has a pending felony charge in this county from the time
they’re arrested.

 

A.                            Yes. . .
.

 

Q.                            Okay. 
When an individual is arrested on a felony charge here and given that cause
number in the district clerk’s office, does that mean that proceedings have
begun in your court?

 

A.                            Of course.

 

Q.                            Would
that be considered an adjudicatory proceeding of the law?

 

A.                            Yes.

 

We believe that the
evidence adduced at trial, including this testimony, when viewed in the light
most favorable to conviction, was sufficient to allow a rational jury to
conclude beyond a reasonable doubt that an “adjudicatory proceeding” was
pending at the time Isassi communicated with Treviño and Hernandez.  See Jackson,
443 U.S. at 319.  We overrule Isassi’s second sub-issue.

C.        “Official
Discretion”

By his
third sub-issue, Isassi asserts Hernandez “had no relevant discretion” with
respect to the pending charge against Gonzalez.  See Tex. Penal Code Ann. § 36.04
(criminalizing only the improper influence of a “public servant who
exercises or will exercise official discretion in an adjudicatory
proceeding” (emphasis added)).[5] 
Isassi points specifically to the following testimony by Hernandez in arguing
that “she had no discretion as to whether a person on bail had to report to
pre-trial supervision”:

Q. [Defense counsel]    I believe you
also testified that there’s standard conditions that are given to these people
when they’re released.  Are the conditions the same for everybody at the time
they’re released?

 

A. [Hernandez]               Yes,
except for a few special conditions and then if there’s any conditions that the
magistrate does not want applied to that person, they can mark through them and
initial.

 

Q.                                      Okay. 
But the magistrate decides that?

 

A.                                      That’s
correct.

 

Q.                                      Not
the pretrial officer?

 

A.                                      That’s
correct.

 

Q.                                      And
this is—I’m trying to understand what—what you’re—you testified you exercise
discretion over people who are released from jail.[[6]] 
I’m trying to understand what your discretion is.

 

A.                                      I
don’t understand.

 

Q.                                      Okay. 
Can we agree that you don’t have any decision-making capacity when it comes to
seeing these people and overseeing their release from jail?  You just handle
forms and the judge makes the decisions?

 

A.                                      Yes,
that’s correct.

 

Q.                                      All
right.  There’s no discretionary calls for you to make because the conditions
are imposed by the judge?

 

A.                                      That’s
correct.

 

Q.                                      All
right.  Then once they get out of jail, do you have a discretion to change
those conditions that they need to abide by or do you have to—if you want to
change a condition, you have to go to the judge?

 

A.                                      We’d
have to go before the judge.

 

In
response, the State notes that, although Hernandez admitted that she had no
discretion to set the conditions of Isassi’s supervision, she did have
discretion “to determine when and whether a pretrial supervisee is arrested for
failure to comply with supervision conditions, as well as other discretion
regarding the carrying out of supervision requirements.”  Specifically,
Hernandez testified as follows:

Q. [Prosecutor]     Who set out the
procedures that your office follows regarding individuals when they’re arrested
and charged with felonies?

 

A. [Hernandez]     Our district judge,
Judge Manuel Bañales.

 

Q.                            And
within those orders from Judge Bañales, your office does exercise some
discretion as to how to handle those individuals, correct?

 

A.                            I don’t
quite understand.

 

Q.                            Do you
ever—if an individual’s reporting to you and say they need to reschedule an
appointment?

 

A.                            Oh, yes.

 

Q.                            Okay. 
So you—

 

A.                            We will
work with them, yes.  If they call us and they can’t report immediately because
of their job, we will work around their schedule wherever needed.

 

Q.                            Okay. 
So because of that, you do have official—able to exercise official discretion
over individuals when they’re reporting to pretrial, correct?

 

A.                            Yes.

 

Q.                            And say
an individual doesn’t report as required.  You have the ability to request a
warrant for that individual for their arrest?

 

A.                            We do
prepare motions to revoke bonds when they don’t follow up on any of the
pretrial conditions. . . .  Then if the judge signs that, then a warrant is
issued for their arrest.

 

Q.                            So all
those are things that you exercise discretion as to when those things are done
within your job description, correct?

 

A.                            Correct.

 

Hernandez also agreed with
the prosecutor that, “based on [Isassi’s] representations to you that the case
was going to be dismissed,” her office “[did not] require Anna Linda Gonzalez
to report immediately upon her release as required.”

The record
reflects that, when Gonzalez was released from county jail on August 5, 2005,
she was instructed to report to the Kleberg County Community Supervision and
Corrections Department “immediately upon release.”  Gonzalez did not report
until September 13, 2005; but a motion to revoke bond was never filed and a
warrant for Gonzalez’s arrest never issued.  Based on this evidence, the jury
could have reasonably inferred that Hernandez “exercised official discretion”
with respect to Gonzalez’s pending criminal charge and that Isassi intended to influence
the exercise of that discretion.  Accordingly, the evidence was sufficient, and
Isassi’s third sub-issue is overruled.

IV. 
Conclusion

            We affirm the
judgment of the trial court.

 

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

17th
day of February, 2011.









[1]
Although Isassi was convicted of two counts of improper influence, the judgment
of conviction signed by the trial court merely states that Isassi’s punishment
shall be “ONE (1) YEARS COUNTY JAIL” without differentiating between the two
counts.  The judgment of conviction also states:  “THIS SENTENCE SHALL RUN
CONCURRENTLY.”





[2]
The Court stated that the evidence of Isassi’s “culpable intent,” when viewed
in the light most favorable to the verdict, included the following:

 

·        
Appellant’s aunt called him from her home even before Constable
Campos arrested her, asking for his advice; thus, he was involved in assisting
his aunt from the very beginning of the incident.

 

·        
Three days after his aunt’s arrest, appellant called Maria Elana
[sic] Hernandez, the pre-trial bond co-ordinator and a person who knew him as
county attorney and a former assistant district attorney.  He told her that Ms.
Gonzalez did not need to report because Constable Campos was being investigated
for some other incident, so this “case was going to be rejected.”

 

·        
Appellant told Ms. Hernandez that he had already spoken to the
D.A.’s office about this case and it was going to be rejected.  In fact,
appellant had not spoken to the D.A.’s office.

 

·        
Appellant did not tell Ms. Hernandez that Ms. Gonzalez was his
aunt.

 

·        
A week after the district attorney’s office received Ms.
Gonzalez’s case, appellant phoned Aida Trevino, an assistant district attorney,
who was a friend of his.  Appellant told Ms. Trevino that her boss, Mark
Skurka, was investigating Constable Campos and “they're not going to prosecute”
the case against Ms. Gonzalez.

 

·        
Mark Skurka testified that he never spoke to appellant about this
case, that he had not reviewed the case filed against Ms. Gonzalez, and that he
would never dismiss a case that he had not reviewed.

 

·        
Mark Skurka also testified that he never had a rule that
Constable Campos’s cases were to be dismissed pending the investigation.  He
told Aida Trevino to hold all of his cases “in limbo” until the investigation
was complete.

 

·        
Appellant did not tell Ms. Trevino that Anna Linda Gonzalez was
his aunt.

 

·        
Ms. Trevino testified that, had she known that Ms. Gonzalez was
appellant's aunt, she would have hesitated to follow up on his comments.

 

·        
Appellant called Ms. Trevino again, after she had discovered from
a third party, that Anna Linda Gonzalez was appellant's aunt.  She had also
discovered by then that Ms. Gonzalez was going to be indicted for aggravated
perjury.  She told appellant that she did not want to see or talk to Ms.
Gonzalez.  She told appellant, “We’re probably going to indict her.  And you
should know better than that.”

 

·        
Appellant then called pretrial services and talked to Officer
Jimenez, another acquaintance.  He asked if Anna Linda Gonzalez had to report
to receive bond conditions, and he told her that there was a possibility that
the district attorney was not going to pursue the case against her because the
arresting officer was under investigation.  He said that he had talked with Ms.
Trevino, but he did not say that Ms. Trevino was upset that he had called her
or that she was not going to do anything to help Ms. Gonzalez.

 

·        
Appellant never told Officer Jimenez that Anna Linda Gonzalez was
his aunt.

 

Isassi v. State, No.
PD-1347-09, 2010 Tex. Crim. App. LEXIS 1287, at *23-25 (Tex. Crim. App. Oct. 6,
2010) (footnote omitted).

 

We note that none of the evidence listed here, even
when viewed in the light most favorable to the State’s case, indicates that
Isassi intended for Treviño or Hernandez to exercise their official discretion
in Gonzalez’s favor on the basis that Gonzalez was Isassi’s aunt. 
(Indeed, Isassi took care not to mention his relationship with Gonzalez to
either Treviño or Hernandez.)  Instead, this evidence merely established that
Isassi harbored an intent to help Gonzalez because she was his aunt. 
There is nothing unlawful about an attorney intending to represent a relative
simply because she is a relative.  Further, and more importantly, evidence of
such an intent says nothing about the basis upon which Isassi intended
to influence the proceeding’s outcome, which to support a conviction must be
one “other than those authorized by law.”  See Tex. Penal Code Ann. § 36.04 (Vernon 2003).  While the
evidence showed clearly that Isassi intended to help Gonzalez because she was
his aunt, there was no evidence adduced that could have led the jury to
reasonably infer that Isassi intended for Treviño or Hernandez to exercise
their official discretion on this or any other unlawful basis.

 

We share the concern expressed by Presiding Judge
Keller that “[u]nder this holding, a friend or relative would be advised never
to speak favorably to a prosecutor about a person under investigation, even if
asked.  Even if his answer is true (e.g., John Doe has never been in trouble
with the law), the speaker risks criminal prosecution by saying so.”  State
v. Isassi, No. PD-1347-09, 2010 Tex. Crim. App. LEXIS 1641, at *2-3 (Tex.
Crim. App. Dec. 8, 2010) (denying Isassi’s motion for rehearing) (Keller, P.J.,
dissenting).  Nevertheless, we are bound by the higher Court’s majority
decision.  See, e.g., State ex rel. Vance v. Clawson, 465 S.W.2d 164,
168 (Tex. Crim. App. 1971) (“The Court of Criminal Appeals is the court of last
resort in this state in criminal matters.  This being so, no other court of this
state has authority to overrule or circumvent its decisions, or disobey its
mandates.”).

 





[3]
Isassi notes that, at the time he spoke with Treviño, Gonzalez “had not been
indicted and was not the subject of any pending motion.”  Further, Isassi
states that when he spoke to Hernandez, “Justice of the Peace de la Paz had not
ordered Gonzalez to participate in pre-trial supervision, no such order had
been sought by the State, and no relief from the routine practice had been
sought by Isassi on behalf of Gonzalez.”





[4]
We note that it is not clear whether Judge Bañales had the authority to
“develop” such a “procedure” regarding arrested but unindicted individuals.  See
Tex. Code Crim. Proc. Ann. art.
17.29(a) (Vernon 2005) (“When the accused has given the required bond, either
to the magistrate or the officer having him in custody, he shall at once be set
at liberty.”).  Isassi does not raise this issue; in any case, the definition
of “adjudicatory proceeding” does not explicitly require the proceeding to be
legitimate or authorized by law.  See Tex.
Penal Code Ann. § 36.04(b).





[5]
Isassi does not dispute on appeal that Treviño possessed the requisite ability
to exercise official discretion at the time he communicated with her.

 





[6]
On direct examination, Hernandez agreed with the prosecutor that, “as a
community supervision officer, [she] ha[s] the ability to exercise official
discretion over the individuals that come into pretrial supervision . . . .”