

NUMBER 13-08-00510-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ALFREDO ISASSI,**                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                            **Appellee.**

---

### On appeal from the 105th District Court
### of Kleberg County, Texas.

---

# MEMORANDUM OPINION ON REMAND

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion on Remand by Justice Garza

Appellant, Alfred Isassi, was convicted of two counts of improper influence, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 36.04 (Vernon 2003). In 2009, we concluded that the evidence adduced at trial was legally insufficient to support the jury's finding that Isassi acted "with the intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law." *Isassi v. State*, No. 13-08-00510-CR, 2009 Tex. App. LEXIS 5822, at *9-12 (Tex. App.–Corpus Christi July 30,

2009).  The court of criminal appeals reversed.  No. PD-1347-09, 2010 Tex. Crim. App.

LEXIS 1287, at *9-31 (Tex. Crim. App. Oct. 6, 2010).  We now consider Isassi's other

challenges to the sufficiency of the evidence supporting his conviction.  We affirm.

## I. BACKGROUND

In our 2009 opinion, we described the factual background of the case as follows:

>     On August 5, 2005, Anna Linda Gonzalez ran a red light in Kingsville, Texas.  Kleberg County Constable Rafael "Ralph" Campos pursued Gonzalez with his vehicle's emergency lights flashing, but Gonzalez did not stop.  Instead, she drove to her home, went inside, and refused to come out.  While inside, Gonzalez called her nephew, Isassi, who was then serving as Kleberg County Attorney.  Isassi advised Gonzalez to cooperate with Constable Campos.  Gonzalez did cooperate; Constable Campos then arrested her and transported her to the county jail.

>     At the county jail, Justice of the Peace Esequiel "Cheque" de la Paz ordered Gonzalez released pursuant to a $500 personal recognizance bond.  Upon her release, Gonzale[z] was given three documents.  The first was a notice commanding her to report immediately to the Pre-Trial Services office of the Kleberg County Community Supervision and Corrections Department.  The second was a document stating in part that "ALL OFFENDERS ARRESTED AND CHARGED WITH ANY FELONY OFFENSE, BY ORDER OF THE JUDGE OF THE 105TH JUDICIAL DISTRICT AND COUNTY COURT AT LAW ARE HEREBY REQUIRED TO PARTICIPATE IN A PRETRIAL INTERVENTION PROGRAM."  This second document, like the first, stated that Gonzalez must report immediately following her release to the Kleberg County Community Supervision and Corrections Department.  The second document also stated that "FAILURE TO REPORT TO OUR OFFICE MAY RESULT IN A BOND FORFEITURE WITH A WARRANT BEING ISSUED FOR YOUR ARREST."  The third document received by Gonzalez directed her to appear before the "COUNTY COURT AT LAW / 105TH DISTRICT COURT" on September 8, 2005.  This third document noted that Gonzalez was charged with evading arrest with a vehicle, a state jail felony.  None of the three documents were signed by the Justice of the Peace or a District Court Judge.  Gonzalez neither reported to the probation office nor appeared in court as directed in the documents.

>     Several days later, Isassi telephoned Maria Elena Hernandez, pre-trial bond coordinator for the 105th Judicial District.  Hernandez testified that "[Isassi] called to let me know that this person, Anna Linda Gonzalez that had been arrested on evading arrest with a vehicle, a felony charge and that she did not need to report to our office for pretrial services."

2

When asked by the State's attorney whether Isassi told her why Gonzalez did not need to report, Hernandez replied: "Well, he said that—that the—that the [ar]rest was done by Constable Ralph Campos and [there] was an investigation on him at the time due to another incident, another arrest on, I guess, another individual and that the case was going to get rejected." Hernandez further testified that Isassi told her that he already had spoken with the District Attorney's office and that the case against Gonzalez "was going to be rejected."

On or about September 1, 2005, Isassi called Aida Treviño, an Assistant District Attorney for Kleberg County. At trial, Treviño described their conversation:

> He [Isassi] said, "Do you have a—do you happen to have a case on Anna Linda—or Anna Gonzalez?" And I was like, "Well, let me look it up." And . . . I said, "Yes, it's a pending case." And so he said, "Well," —he says, "Ralph Campos is the one that arrested her." I said, "Yeah, that's what I'm showing. It's still pending." He says, "Well, did you know that [First Assistant District Attorney] Mark Skurka has a pending investigation—an open pending investigation on Ralph Campos?" And I said, "No, I didn't know that." He says, "Yeah." He goes, "And they're not going to prosecute the case." I was like, "Okay." I said, "Well, let me go ahead and check with him." I said, "If that's the case, then I'll go ahead and—and dump the case," because—and I remember telling him, I was like, "One less case I have to deal with." I was like, "You know how much work there is up here." So I was like, "We'll go ahead and dump it as soon as I—I get that."

On September 13, 2005, at the direction of Hernandez, pre-trial officer Ruth Jimenez sent a letter to Gonzalez advising her that she is required to "report and submit to pre-trial supervision pending charges until further Order of the Court." Jimenez testified that she received a telephone call from Isassi on September 16, 2005. Isassi "indicated that there could be a possibility that the case [against Gonzalez] would be dismissed," and he asked if Gonzalez "still needed to report" to pre-trial services. Jimenez "advised [Isassi] at that point that [Gonzalez] would still need to report because it was standard procedure and once we had documentation, then, of course, then we would close the case up at that point." In his various telephone conversations, Isassi did not advise Hernandez, Trevino, or Jimenez of his relation to Gonzalez.

Gonzalez reported to pre-trial services later on September 16, 2005. At that time, Gonzalez received and signed a document entitled "Conditions of Bail Pending Trial" commanding her to appear again in court on October 6, 2005. Ultimately, Gonzalez was indicted, but the case

3

against her was dismissed on July 24, 2006 pursuant to a plea agreement . . . .

*Isassi*, 2009 Tex. App. LEXIS 5822, at *1-5 (citations and footnotes omitted). After a jury trial, Isassi was convicted of improperly influencing Treviño and Hernandez. *See* TEX. PENAL CODE ANN. § 36.04. The trial court sentenced Isassi to one year in the county jail, with the sentence suspended and community supervision imposed for a period of six months.[1] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3 (Vernon 2008).

On appeal, Isassi argued that the evidence was both legally and factually insufficient to support the jury's implicit findings (1) that he acted "with the intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law," (2) that the communications at issue were made in the context of "an adjudicatory proceeding," or (3) that Hernandez was "a public servant who exercises or will exercise official discretion" in such a proceeding. *Isassi*, 2009 Tex. App. LEXIS 5822, at *6-7. Because we found that the evidence was legally insufficient as to Isassi's intent, we did not address the factual sufficiency question with respect to intent, and we did not address whether the evidence was legally or factually sufficient to support the findings that the communications were made in an adjudicatory proceeding or that Hernandez would exercise official discretion in such a proceeding. *Id.* at *12 n.2 (citing TEX. R. APP. P. 47.1; *Williams v. State*, 235 S.W.3d 742, 746 n.3 (Tex. Crim. App. 2007)).

## II. APPLICABLE LAW AND STANDARD OF REVIEW

In *Brooks v. State*, the court of criminal appeals held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in

---

[1] Although Isassi was convicted of two counts of improper influence, the judgment of conviction signed by the trial court merely states that Isassi's punishment shall be "ONE (1) YEARS COUNTY JAIL" without differentiating between the two counts. The judgment of conviction also states: "THIS SENTENCE SHALL RUN CONCURRENTLY."

4

determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under *Jackson*, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, Isassi committed the offense of improper influence if he:

> privately addresse[d] a representation, entreaty, argument, or other communication to any public servant who exercises or will exercise official discretion in an adjudicatory proceeding with an intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law.

5

TEX. PENAL CODE ANN. § 36.04(a). "Adjudicatory proceeding" is defined as "any proceeding before a court or any other agency of government in which the legal rights, powers, duties, or privileges of specified parties are determined." *Id.* § 36.04(b). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a) (Vernon 2003).

When interpreting a statute, we do so "according to the fair import of [its] terms, to promote justice and effect the objectives of the [penal] code." *Id.* § 1.05(a) (Vernon 2003). Those objectives include "giv[ing] fair warning of what is prohibited" and "safeguard[ing] conduct that is without guilt from condemnation as criminal." *Id.* § 1.02(2), (4) (Vernon 2003).

### III. DISCUSSION

#### A. Intent

By his first sub-issue on appeal, Isassi argues that the evidence was legally and factually insufficient to establish that he intended to influence the outcome of a proceeding "on the basis of considerations other than those authorized by law." *See id.* § 36.04(a). As noted, the court of criminal appeals determined that the evidence was legally sufficient for the jury to have reached that conclusion beyond a reasonable doubt. *See Isassi*, 2010 Tex. Crim. App. LEXIS 1287, at *9-31.[2] In light of the court of

---

[2] The Court stated that the evidence of Isassi's "culpable intent," when viewed in the light most favorable to the verdict, included the following:

- Appellant's aunt called him from her home even before Constable Campos arrested her, asking for his advice; thus, he was involved in assisting his aunt from the very beginning of the incident.

- Three days after his aunt's arrest, appellant called Maria Elana [sic] Hernandez, the pre-trial bond co-ordinator and a person who knew him as county attorney and a former assistant district attorney. He told her that Ms. Gonzalez did not need to report because Constable Campos was being investigated for some

6

other incident, so this "case was going to be rejected."

- Appellant told Ms. Hernandez that he had already spoken to the D.A.'s office about this case and it was going to be rejected. In fact, appellant had not spoken to the D.A.'s office.

- Appellant did not tell Ms. Hernandez that Ms. Gonzalez was his aunt.

- A week after the district attorney's office received Ms. Gonzalez's case, appellant phoned Aida Trevino, an assistant district attorney, who was a friend of his. Appellant told Ms. Trevino that her boss, Mark Skurka, was investigating Constable Campos and "they're not going to prosecute" the case against Ms. Gonzalez.

- Mark Skurka testified that he never spoke to appellant about this case, that he had not reviewed the case filed against Ms. Gonzalez, and that he would never dismiss a case that he had not reviewed.

- Mark Skurka also testified that he never had a rule that Constable Campos's cases were to be dismissed pending the investigation. He told Aida Trevino to hold all of his cases "in limbo" until the investigation was complete.

- Appellant did not tell Ms. Trevino that Anna Linda Gonzalez was his aunt.

- Ms. Trevino testified that, had she known that Ms. Gonzalez was appellant's aunt, she would have hesitated to follow up on his comments.

- Appellant called Ms. Trevino again, after she had discovered from a third party, that Anna Linda Gonzalez was appellant's aunt. She had also discovered by then that Ms. Gonzalez was going to be indicted for aggravated perjury. She told appellant that she did not want to see or talk to Ms. Gonzalez. She told appellant, "We're probably going to indict her. And you should know better than that."

- Appellant then called pretrial services and talked to Officer Jimenez, another acquaintance. He asked if Anna Linda Gonzalez had to report to receive bond conditions, and he told her that there was a possibility that the district attorney was not going to pursue the case against her because the arresting officer was under investigation. He said that he had talked with Ms. Trevino, but he did not say that Ms. Trevino was upset that he had called her or that she was not going to do anything to help Ms. Gonzalez.

- Appellant never told Officer Jimenez that Anna Linda Gonzalez was his aunt.

*Isassi v. State*, No. PD-1347-09, 2010 Tex. Crim. App. LEXIS 1287, at *23-25 (Tex. Crim. App. Oct. 6, 2010) (footnote omitted).

We note that none of the evidence listed here, even when viewed in the light most favorable to the State's case, indicates that Isassi intended for Treviño or Hernandez to exercise their official discretion in Gonzalez's favor *on the basis that Gonzalez was Isassi's aunt*. (Indeed, Isassi took care not to mention his relationship with Gonzalez to either Treviño or Hernandez.) Instead, this evidence merely established that Isassi harbored an *intent to help Gonzalez* because she was his aunt. There is nothing unlawful about an attorney intending to represent a relative simply because she is a relative. Further, and more importantly, evidence of such an intent says nothing about *the basis upon which* Isassi intended to

7

criminal appeals' conclusion in *Brooks* that the legal sufficiency and factual sufficiency standards of review are "indistinguishable," 323 S.W.3d at 902, we need not conduct a separate factual sufficiency analysis of the evidence supporting this facet of the intent element. Instead, we are compelled to conclude that the evidence was sufficient to establish that Isassi intended to influence the outcome of a proceeding "on the basis of considerations other than those authorized by law." Isassi's first sub-issue is overruled.

## B.    Pending "Adjudicatory Proceeding"

By his second sub-issue, Isassi argues that there was "no pending court proceeding to determine 'any right, power, duty or privilege'" at the time he made the communications at issue.[3]

In addressing this sub-issue, we first note that it is unclear whether the State was obligated to show that an adjudicatory proceeding was "pending" at that time. Section 36.04 of the penal code, according to its plain language, does not strictly require that the adjudicatory proceeding be "pending" at the time the communication is made, as Isassi claims; instead, it merely requires that the communication be directed at "any

---

influence the proceeding's outcome, which to support a conviction must be one "other than those authorized by law." *See* TEX. PENAL CODE ANN. § 36.04 (Vernon 2003). While the evidence showed clearly that Isassi intended to help Gonzalez because she was his aunt, there was no evidence adduced that could have led the jury to reasonably infer that Isassi intended for Treviño or Hernandez to exercise their official discretion on this or any other unlawful basis.

We share the concern expressed by Presiding Judge Keller that "[u]nder this holding, a friend or relative would be advised never to speak favorably to a prosecutor about a person under investigation, even if asked. Even if his answer is true (e.g., John Doe has never been in trouble with the law), the speaker risks criminal prosecution by saying so." *State v. Isassi*, No. PD-1347-09, 2010 Tex. Crim. App. LEXIS 1641, at *2-3 (Tex. Crim. App. Dec. 8, 2010) (denying Isassi's motion for rehearing) (Keller, P.J., dissenting). Nevertheless, we are bound by the higher Court's majority decision. *See, e.g., State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates.").

[3] Isassi notes that, at the time he spoke with Treviño, Gonzalez "had not been indicted and was not the subject of any pending motion." Further, Isassi states that when he spoke to Hernandez, "Justice of the Peace de la Paz had not ordered Gonzalez to participate in pre-trial supervision, no such order had been sought by the State, and no relief from the routine practice had been sought by Isassi on behalf of Gonzalez."

8

public servant who exercises or will exercise official discretion in an adjudicatory proceeding." Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 36.04(a).

Nevertheless, even assuming that the State was under an obligation to show that an adjudicatory proceeding was pending at the time Isassi made the allegedly improper communications, we find that the evidence was sufficient to support such a finding. The indictment identified the proceeding at issue as "a pending felony criminal charge of evading arrest or detention in a motor vehicle against Anna Gonzalez . . . ." It is undisputed that Gonzalez was arrested for this offense prior to the time Isassi made his allegedly improper entreaties to Treviño and Hernandez. It is also undisputed that, at that time, the district attorney's office had not yet indicted Gonzalez, nor had it dismissed or "no-billed" the charge against her. During the relevant time period, therefore, Gonzalez was in a state of legal limbo, having not been formally charged by a grand jury of the felony offense she was arrested for, yet still being subject to the instructions given to her by the magistrate at the county jail following her arrest. Those instructions, however, were not negligible. In three separate documents following her release from jail, Gonzalez was informed that she was required to participate in a pre-trial intervention program, to report to the Kleberg County Community Supervision and Corrections Department, and to appear in court on September 8, 2005. These instructions are evidence that a "proceeding" was under way in which Gonzalez's "duties" and "privileges" would be determined. *See id.* § 36.04(b). Although the documents were not signed by a magistrate or district court judge, the jury did hear the following testimony of J. Manuel Bañales, then-judge of the 105th District Court and presiding judge of the Fifth Administrative Judicial Region:

> Q. [Prosecutor]   Could you tell the jury the procedures that have been implemented to deal with individuals when they've been

9

arrested for a felony offense in Kleberg County?

A. [Bañales]   Yes. I developed those rules [in the] late '80s, early '90s as a results of changes made by the legislature at that time. The whole purpose of that was to set up a procedure that would be followed by my court as well as the County Court at Law with regard to felony cases in which whenever a person would be arrested and charged with any felony offense, then our probation department would immediately make contact with the person and inform the person that if the person posted bond, that that person would be required to report to a pretrial officer until the case was either dismissed or it was resolved in trial in some—in court in some form . . . .[4]

. . . .

Q.   When an individual is arrested on a felony charge in this county, is a number created in the district clerk's office?

A.   Yes, it is.

Q.   And so that individual has a pending felony charge in this county from the time they're arrested.

A.   Yes. . . .

Q.   Okay. When an individual is arrested on a felony charge here and given that cause number in the district clerk's office, does that mean that proceedings have begun in your court?

A.   Of course.

Q.   Would that be considered an adjudicatory proceeding of the law?

A.   Yes.

---

[4] We note that it is not clear whether Judge Bañales had the authority to "develop" such a "procedure" regarding arrested but unindicted individuals. *See* TEX. CODE CRIM. PROC. ANN. art. 17.29(a) (Vernon 2005) ("When the accused has given the required bond, either to the magistrate or the officer having him in custody, he shall at once be set at liberty."). Isassi does not raise this issue; in any case, the definition of "adjudicatory proceeding" does not explicitly require the proceeding to be legitimate or authorized by law. *See* TEX. PENAL CODE ANN. § 36.04(b).

10

We believe that the evidence adduced at trial, including this testimony, when viewed in the light most favorable to conviction, was sufficient to allow a rational jury to conclude beyond a reasonable doubt that an "adjudicatory proceeding" was pending at the time Isassi communicated with Treviño and Hernandez. *See Jackson*, 443 U.S. at 319. We overrule Isassi's second sub-issue.

## C. "Official Discretion"

By his third sub-issue, Isassi asserts Hernandez "had no relevant discretion" with respect to the pending charge against Gonzalez. *See* TEX. PENAL CODE ANN. § 36.04 (criminalizing only the improper influence of a "public servant *who exercises or will exercise official discretion* in an adjudicatory proceeding" (emphasis added)).[5] Isassi points specifically to the following testimony by Hernandez in arguing that "she had no discretion as to whether a person on bail had to report to pre-trial supervision":

| | |
|---|---|
| Q. [Defense counsel] | I believe you also testified that there's standard conditions that are given to these people when they're released. Are the conditions the same for everybody at the time they're released? |
| A. [Hernandez] | Yes, except for a few special conditions and then if there's any conditions that the magistrate does not want applied to that person, they can mark through them and initial. |
| Q. | Okay. But the magistrate decides that? |
| A. | That's correct. |
| Q. | Not the pretrial officer? |
| A. | That's correct. |
| Q. | And this is—I'm trying to understand what—what you're—you testified you exercise discretion over |

---

[5] Isassi does not dispute on appeal that Treviño possessed the requisite ability to exercise official discretion at the time he communicated with her.

people who are released from jail.[6] I'm trying to understand what your discretion is.

A.          I don't understand.

Q.          Okay. Can we agree that you don't have any decision-making capacity when it comes to seeing these people and overseeing their release from jail? You just handle forms and the judge makes the decisions?

A.          Yes, that's correct.

Q.          All right. There's no discretionary calls for you to make because the conditions are imposed by the judge?

A.          That's correct.

Q.          All right. Then once they get out of jail, do you have a discretion to change those conditions that they need to abide by or do you have to—if you want to change a condition, you have to go to the judge?

A.          We'd have to go before the judge.

In response, the State notes that, although Hernandez admitted that she had no discretion to set the conditions of Isassi's supervision, she did have discretion "to determine when and whether a pretrial supervisee is arrested for failure to comply with supervision conditions, as well as other discretion regarding the carrying out of supervision requirements." Specifically, Hernandez testified as follows:

Q. [Prosecutor]   Who set out the procedures that your office follows regarding individuals when they're arrested and charged with felonies?

A. [Hernandez]   Our district judge, Judge Manuel Bañales.

Q.          And within those orders from Judge Bañales, your office does exercise some discretion as to how to handle

---

[6] On direct examination, Hernandez agreed with the prosecutor that, "as a community supervision officer, [she] ha[s] the ability to exercise official discretion over the individuals that come into pretrial supervision . . . ."

12

those individuals, correct?

A.    I don't quite understand.

Q.    Do you ever—if an individual's reporting to you and say they need to reschedule an appointment?

A.    Oh, yes.

Q.    Okay.  So you—

A.    We will work with them, yes.  If they call us and they can't report immediately because of their job, we will work around their schedule wherever needed.

Q.    Okay.  So because of that, you do have official—able to exercise official discretion over individuals when they're reporting to pretrial, correct?

A.    Yes.

Q.    And say an individual doesn't report as required.  You have the ability to request a warrant for that individual for their arrest?

A.    We do prepare motions to revoke bonds when they don't follow up on any of the pretrial conditions. . . .  Then if the judge signs that, then a warrant is issued for their arrest.

Q.    So all those are things that you exercise discretion as to when those things are done within your job description, correct?

A.    Correct.

Hernandez also agreed with the prosecutor that, "based on [Isassi's] representations to you that the case was going to be dismissed," her office "[did not] require Anna Linda Gonzalez to report immediately upon her release as required."

The record reflects that, when Gonzalez was released from county jail on August 5, 2005, she was instructed to report to the Kleberg County Community Supervision and Corrections Department "immediately upon release."  Gonzalez did not report until

13

September 13, 2005; but a motion to revoke bond was never filed and a warrant for Gonzalez's arrest never issued. Based on this evidence, the jury could have reasonably inferred that Hernandez "exercised official discretion" with respect to Gonzalez's pending criminal charge and that Isassi intended to influence the exercise of that discretion. Accordingly, the evidence was sufficient, and Isassi's third sub-issue is overruled.

## IV. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
17th day of February, 2011.