NUMBER 13-08-00510-CR

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ALFRED ISASSI,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal from the 105th District Court of Kleberg County, Texas.

# O P I N I O N

### Before Chief Justice Valdez and Justices Garza and Vela
### Opinion by Justice Garza

Appellant, Alfred Isassi, was convicted of two counts of improper influence, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 36.04 (Vernon 2003). His sentence of one year's confinement in the Kleberg County Jail was suspended, and he was placed on community supervision for six months. Isassi now appeals, contending that the evidence adduced at trial was legally and factually insufficient to support his conviction. Because we find the evidence legally insufficient, we reverse and render a judgment of acquittal.

## I. BACKGROUND

On August 5, 2005, Anna Linda Gonzalez ran a red light in Kingsville, Texas. Kleberg County Constable Rafael "Ralph" Campos pursued Gonzalez with his vehicle's emergency lights flashing, but Gonzalez did not stop. Instead, she drove to her home,

went inside, and refused to come out. While inside, Gonzalez called her nephew, Isassi, who was then serving as Kleberg County Attorney. Isassi advised Gonzalez to cooperate with Constable Campos. Gonzalez did cooperate; Constable Campos then arrested her and transported her to the county jail.

At the county jail, Justice of the Peace Esequiel "Cheque" de la Paz ordered Gonzalez released pursuant to a $500 personal recognizance bond. Upon her release, Gonzales was given three documents. The first was a notice commanding her to report immediately to the Pre-Trial Services office of the Kleberg County Community Supervision and Corrections Department. The second was a document stating in part that "ALL OFFENDERS ARRESTED AND CHARGED WITH ANY FELONY OFFENSE, BY ORDER OF THE JUDGE OF THE 105TH JUDICIAL DISTRICT AND COUNTY COURT AT LAW ARE HEREBY REQUIRED TO PARTICIPATE IN A PRETRIAL INTERVENTION PROGRAM." This second document, like the first, stated that Gonzalez must report immediately following her release to the Kleberg County Community Supervision and Corrections Department. The second document also stated that "FAILURE TO REPORT TO OUR OFFICE MAY RESULT IN A BOND FORFEITURE WITH A WARRANT BEING ISSUED FOR YOUR ARREST." The third document received by Gonzalez directed her to appear before the "COUNTY COURT AT LAW / 105TH DISTRICT COURT" on September 8, 2005. This third document noted that Gonzalez was charged with evading arrest with a vehicle, a state jail felony. *See id.* § 38.04(a), (b)(1) (Vernon 2003). None of the three documents were signed by the Justice of the Peace or a District Court Judge. Gonzalez neither reported to the probation office nor appeared in court as directed in the documents.

Several days later, Isassi telephoned Maria Elena Hernandez, pre-trial bond coordinator for the 105th Judicial District. Hernandez testified that "[Isassi] called to let me know that this person, Anna Linda Gonzalez that had been arrested on evading arrest with a vehicle, a felony charge and that she did not need to report to our office for pretrial

2

services." When asked by the State's attorney whether Isassi told her why Gonzalez did not need to report, Hernandez replied: "Well, he said that—that the—that the [ar]rest was done by Constable Ralph Campos and [there] was an investigation on him at the time due to another incident, another arrest on, I guess, another individual and that the case was going to get rejected." Hernandez further testified that Isassi told her that he already had spoken with the District Attorney's office and that the case against Gonzalez "was going to be rejected."[1]

On or about September 1, 2005, Isassi called Aida Treviño, an Assistant District Attorney for Kleberg County. At trial, Treviño described their conversation:

> He [Isassi] said, "Do you have a—do you happen to have a case on Anna Linda—or Anna Gonzalez?" And I was like, "Well, let me look it up." And . . . I said, "Yes, it's a pending case." And so he said, "Well,"—he says, "Ralph Campos is the one that arrested her." I said, "Yeah, that's what I'm showing. It's still pending." He says, "Well, did you know that [First Assistant District Attorney] Mark Skurka has a pending investigation—an open pending investigation on Ralph Campos?" And I said, "No, I didn't know that." He says, "Yeah." He goes, "And they're not going to prosecute the case." I was like, "Okay." I said, "Well, let me go ahead and check with him." I said, "If that's the case, then I'll go ahead and—and dump the case," because—and I remember telling him, I was like, "One less case I have to deal with." I was like, "You know how much work there is up here." So I was like, "We'll go ahead and dump it as soon as I—I get that."

On September 13, 2005, at the direction of Hernandez, pre-trial officer Ruth Jimenez sent a letter to Gonzalez advising her that she is required to "report and submit to pre-trial supervision pending charges until further Order of the Court." Jimenez testified that she received a telephone call from Isassi on September 16, 2005. Isassi "indicated that there could be a possibility that the case [against Gonzalez] would be dismissed," and he asked if Gonzalez "still needed to report" to pre-trial services. Jimenez "advised [Isassi] at that point that [Gonzalez] would still need to report because it was standard procedure and once we had documentation, then, of course, then we would close the case up at that point." In his various telephone conversations, Isassi did not advise Hernandez, Treviño,

---

[1] First Assistant District Attorney Mark Skurka testified at trial that he had not talked directly to Isassi about Gonzalez's case.

or Jimenez of his relation to Gonzalez.

Gonzalez reported to pre-trial services later on September 16, 2005. At that time, Gonzalez received and signed a document entitled "Conditions of Bail Pending Trial" commanding her to appear again in court on October 6, 2005. Ultimately, Gonzalez was indicted, but the case against her was dismissed on July 24, 2006 pursuant to a plea agreement in another case involving Gonzalez's service on a Kleberg County grand jury.

Isassi was indicted on July 19, 2007 on one count of abuse of official capacity with respect to his communications with Treviño, and three counts of improper influence with respect to his communications with Treviño, Hernandez, and Jimenez. *See id.* §§ 36.04, 39.02(a)(1) (Vernon 2003). After a trial on July 7, 2008, the trial court directed a not guilty verdict on Counts I (alleging abuse of official capacity) and IV (alleging improper influence with respect to Jimenez). The jury returned a guilty verdict on Counts II (alleging improper influence with respect to Treviño) and III (alleging improper influence with respect to Hernandez). The trial court then sentenced Isassi to one year in county jail, suspended the sentence, and placed Isassi on community supervision for six months. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3 (Vernon Supp. 2008). This appeal followed.

## II. DISCUSSION

Isassi argues by one issue that the evidence adduced at trial was legally and factually insufficient to support his conviction. Isassi specifically contends that the State failed to prove: (1) that he intended to influence Treviño or Hernandez on the basis of "prohibited considerations"; (2) that his discussions with Treviño or Hernandez took place in the context of an "adjudicatory proceeding"; or (3) that Hernandez had any official discretion with respect to the subject of his communication. *See* TEX. PENAL CODE ANN. § 36.04.

## A. Standard of Review

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). "If the evidence establishes precisely what the State has alleged, but the acts that the State has alleged do not constitute a criminal offense under the totality of the circumstances, then that evidence, as a matter of law, cannot support a conviction." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Isassi committed the offense of improper influence if he: (1) privately addressed a representation, entreaty, argument, or other communication; (2) to any public servant who exercises or will exercise official discretion in an adjudicatory proceeding; (3) with an intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law. Tex. Penal Code Ann. § 36.04. A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003).

## B.     Analysis

We address first whether the State produced legally sufficient evidence to establish that Isassi had "an intent to influence the outcome of [a] proceeding on the basis of

5

considerations other than those authorized by law." *See id.* § 36.04. This phrase is not precisely defined in the penal code, nor have we found any case law interpreting the phrase. We will, therefore, construe it "according to the fair import of [its] terms, to promote justice and effect the objectives of the [penal] code." *Id.* § 1.05(a) (Vernon 2003). Those objectives include "giv[ing] fair warning of what is prohibited" and "safeguard[ing] conduct that is without guilt from condemnation as criminal." *Id.* § 1.02(2), (4) (Vernon 2003).

The evidence adduced at trial established that Isassi contacted both Treviño and Hernandez in order to advise them that Constable Campos was under investigation, and that the First Assistant District Attorney did not intend to prosecute Gonzalez for this reason. There was no evidence that Isassi offered to do anything, either in his private capacity or in his capacity as County Attorney, in exchange for a favorable result in his aunt's case. Nor was there any evidence that Isassi gave any information to Treviño and Hernandez that those individuals could not lawfully utilize in determining how to exercise their official discretion.

The State asserts on appeal that "Isassi attempted to influence [Treviño] . . . by implying that her boss had authorized her to dump his aunt's case early, before anyone would have paid any attention to her doing so." The State also notes that Isassi "informed [Hernandez] that [Gonzalez] did not need to report [to pre-trial services] because the case was to be rejected." However, the State did not—at trial or on appeal—explain how Isassi attempted to exercise influence on the basis of "considerations other than those authorized by law." The State directs us to no law, and we find none, indicating that one may not legally inform a prosecutor or pre-trial bond coordinator that a particular case will be rejected by the relevant prosecuting authority. Moreover, the State does not establish that the decision by the District Attorney's office of whether to prosecute Gonzalez was an improper basis for Treviño and Hernandez to use in carrying out their official duties. The intent of the District Attorney to drop the case against Gonzalez was indeed a factor that

6

Treviño and Hernandez were clearly authorized by law to consider in making official decisions regarding Gonzalez's case.

Isassi's position as Kleberg County Attorney and his failure to disclose his relationship with Gonzalez may have given his communications with Treviño and Hernandez an aura of impropriety. However, the fact remains that Isassi did nothing that a private citizen could not do—he merely advised Treviño and Hernandez that the case against his aunt was weak and would not be prosecuted. To hold Isassi criminally liable for this behavior would be to obscure the line between routine communications with law enforcement officials and illegal attempts to coerce those officials to make decisions based on improper considerations. *See id.* § 1.02(2). The latter act is reprehensible and deserving of punishment when it occurs, but no rational trier of fact could have found beyond a reasonable doubt that Isassi in fact committed such an act here. *See Sanders*, 119 S.W.3d at 820.

We conclude that the State produced no evidence indicating that Isassi intended to influence the outcome of Gonzalez's case "on the basis of considerations other than those authorized by law." *See id.* § 36.04. Accordingly, the evidence was legally insufficient to support Isassi's conviction.[2] Isassi's issue is sustained.

### III. CONCLUSION

We reverse the judgment of the trial court and render a judgment of acquittal.

DORI CONTRERAS GARZA,
Justice

Publish.
TEX. R. APP. P. 47.2(b).

---

[2] Because the evidence was legally insufficient to support a finding that Isassi "inten[ded] to influence the outcome of the proceeding on the basis of considerations other than those authorized by law," we need not address whether the evidence was sufficient to establish (1) that his communications took place in the context of an "adjudicatory proceeding" or (2) that Hernandez "exercise[d] or [would have] exercise[d] official discretion" in such a proceeding. *See* TEX. PENAL CODE ANN.§ 36.04 (Vernon 2003); TEX. R. APP. P. 47.1. Moreover, because we find the evidence legally insufficient, we do not address the question of factual sufficiency. *See* TEX. R. APP. P. 47.1; *Williams v. State*, 235 S.W.3d 742, 746 n.3 (Tex. Crim. App. 2007).

7

Opinion delivered and filed
this the 30th day of July, 2009.

8