ACCEPTED
03-15-00110-CR
7056295
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/23/2015 1:15:02 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00110-CR

### IN THE COURT OF APPEALS

### THIRD DISTRICT OF TEXAS

### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/23/2015 1:15:02 PM
JEFFREY D. KYLE
Clerk

| | | |
|---|---|---|
| THOMAS KRAUSZ | § | APPELLANT |
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

### APPEAL FROM THE 299TH JUDICIAL DISTRICT COURT

### TRAVIS COUNTY, TEXAS

### CAUSE NO. D-1-DC-13-302230

### STATE'S BRIEF

**ROSEMARY LEHMBERG**
District Attorney
Travis County, Texas

**Lisa Stewart**
Assistant District Attorney
State Bar No. 06022700
Lisa.Stewart@traviscountytx.gov
AppellateTCDA@traviscountytx.gov
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax No. 854-4810

Oral Argument Not Requested

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... 2

INDEX OF AUTHORITIES ............................................................................... 3

STATEMENT OF THE CASE ............................................................................ 4

SUMMARY OF THE ARGUMENTS ................................................................ 5

STATEMENT OF FACTS FROM GUILT/INNOCENCE ........................................ 9

STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR ...................... 17

Appellant failed to preserve any alleged error for review because he did not make an offer of proof and his argument on appeal differs from his trial arguments. Additionally, the trial judge did not abuse her discretion in excluding Defendant's Exhibit 1 because it was inadmissible hearsay. Finally, any alleged error was harmless because the same evidence was admitted through other sources. .................................................................................... 17

STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR .................. 24

The evidence was legally sufficient to establish beyond a reasonable doubt that appellant possessed a prohibited weapon as alleged in the indictment. ................................................ 24

PRAYER ........................................................................................................ 29

CERTIFICATE OF COMPLIANCE .................................................................. 29

CERTIFICATE OF SERVICE .......................................................................... 30

# INDEX OF AUTHORITIES

**Cases**

*Adelman v. State,* 828 S.W.2d 418 (Tex.Crim.App. 1992) ........................................................25

*Bowden v. State,* 628 S.W.2d 782 (Tex.Crim.App. 1982) ........................................................25

*Cain v. State,* 958 S.W.2d 404 (Tex.Crim.App. 1997) ............................................................24

*Crawford v. Washington*, 541 U.S. 36 (2004) ............................................................. 17, 18, 20

*Ex parte Miles*, 359 S.W.3d 647 (Tex.Crim.App. 2012) ........................................................20

*Garrett v. State*, 998 S.W.2d 307 (Tex.App. – Texarkana 1999, pet.ref'd. untimely filed) .........18

*Halprin v. State*, 170 S.W.3d 111 (Tex.Crim.App. 2005) ........................................................22

*Holmes v. State*, 323 S.W.3d 163 (Tex.Crim.App. 2009) ........................................................18

*Hooper v. State*, 214 S.W.3d 9 (Tex.Crim.App. 2007) ............................................................24

*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................................................24

*Martin v. State*, 173 S.W.3d 463 (Tex.Crim.App. 2005) ........................................................21

*Matson v. State,* 819 S.W.2d 839 (Tex.Crim.App. 1991) ........................................................25

*McCain v. State*, 22 S.W.3d 497 (Tex.Crim.App. 2000) ........................................................24

*Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App. 1991) (opinion on rehearing) ..............21

*Pena v. State*, 353 S.W.3d 797 (Tex.Crim.App. 2011) ............................................................21

*Rezac v. State*, 782 S.W.2d 869 (Tex.Crim.App. 1990) ..........................................................20

*Soliz v. State*, 432 S.W.3d 895 (Tex.Crim.App. 2014), *cert.denied*, 135 S.Ct. 1154 (2015) ........27

*Taylor v. State*, 268 S.W.3d 571 (Tex.Crim.App. 2008) ............................................. 6, 21, 22, 23

*Turro v. State*, 867 S.W.2d 43 (Tex.Crim.App. 1993) ............................................................24

*Warner v. State*, 969 S.W.2d 1 (Tex.Crim.App. 1998) ............................................................19

*Wilson v. State*, 71 S.W.3d 346 (Tex.Crim.App. 2002) ..........................................................20


**Statutes**

V.T.C.A. Penal Code §46.05 ...............................................................................................4, 25


**Rules**

Tex.R.App.Proc. 33.1 ..............................................................................................................20

Tex.R.App.Proc. 44.2(b) ........................................................................................................6, 22

Tex.R.App.Proc. 9.4(e) ...........................................................................................................28

Tex.R.App.Proc. 9.4(i)(2)(A) ..................................................................................................28

Tex.R.Evid. 103(a)(2) ...........................................................................................................5, 18

Tex.R.Evid. 801(d) .................................................................................................................6, 21

Tex.R.Evid. 801(e)(2) ..........................................................................................................16, 20

3

## NO. 03-15-00110-CR

## IN THE COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

## AUSTIN, TEXAS

| | | |
|---|---|---|
| THOMAS KRAUSZ | § | APPELLANT |
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

APPEAL FROM THE 299TH JUDICIAL DISTRICT COURT

TRAVIS COUNTY, TEXAS

CAUSE NO. D-1-DC-13-302230

**TO THE HONORABLE COURT OF APPEALS:**

Now comes the State of Texas and files its brief in response to that of the

appellant.

**STATEMENT OF THE CASE**

The State indicted appellant for the third-degree-felony of possession of a

prohibited weapon, a firearm silencer.  V.T.C.A. Penal Code §46.05.  (CR 12).[1]

Appellant pled not guilty to the offense and waived a jury trial.  (CR 19; RR II:

---

[1] The State consolidated this offense for trial with two others, to-wit: burglary of a habitation and theft of a firearm, charged in D-1-DC-13-302019 and D-1-DC-13-302043, respectively. (CR 20). In a trial before court, appellant pled guilty to burglary of a habitation in cause number D-1-DC-13-302019 and to theft of a firearm in cause number D-1-DC-13-302043.  (RR II: 10).

4

11).  After hearing evidence from the State and the defense, the trial judge found appellant guilty of possession of a prohibited weapon.  (CR 51).  Appellant filed an application for community supervision, which the trial judge rejected.  The trial judge sentenced appellant to five years imprisonment in the Texas Department of Criminal Justice – Institutional Division.  (CR 35, 51, 57).  Appellant timely filed a motion for new trial, which was apparently overruled by operation of law.[2]  (CR 60-62).  Appellant timely filed notice of appeal.  (CR 77).  The trial judge certified appellant's right to appeal "but only as provided by law."  (CR 46).

## SUMMARY OF THE ARGUMENTS

***State's Reply to Appellant's First Point of Error***:  Appellant failed to preserve alleged error for review in the trial court's exclusion of Defendant's Exhibit 1 from evidence for two reasons.  First, appellant failed to make a sufficient offer of proof under Tex.R.Evid. 103(a)(2).  When he offered the exhibit into evidence, appellant did not inform the trial court of the substance of the report, summarize the contents of the report, or explain its relevance.  Appellant only proffered that it was a crime lab report with regard to the alleged silencer. Secondly, appellant's arguments on

---

[2] The Clerk's Record also includes a document entitled "Order Setting Hearing on Motion for New Trial" that appellant filed with his motion for new trial.  (CR 63).  On a duplicate copy of this document in the Clerk's Record, the trial judge has crossed through the language of the order and written "denied 1-12-15."  (CR 67).  It is unclear whether the denial refers to the motion for new trial or to the motion for a hearing, but appellant's Notice of Appeal notes that the trial court denied his motion for new trial on January 12, 2015.  (CR 77).

5

appeal do not comport with his arguments at trial. Appellant contends on appeal that the exhibit was admissible as an admission of a party opponent, but at trial, he only contended the crime lab report was admissible because the State had provided it in discovery.

Alternatively, the trial judge did not abuse her discretion in sustaining the State's hearsay objection to the proffered exhibit. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R.Evid. 801(d). Defendant's Exhibit 1 was an out-of-court statement that appellant offered for the truth of the matters contained therein. This statement was not prepared by Officer Chopin, the witness through whom appellant offered it into evidence. In fact, Officer Chopin did not know that the homemade silencer in this case had been submitted to the crime lab for testing. Appellant did not attempt to establish the admissibility of the crime lab report under any exception to the hearsay rule.

Finally, assuming any alleged error is presented for review, it was harmless under Tex.R.App.Proc. 44.2(b). The contents of the excluded lab report were admitted through other evidence and argued by the parties. The State stipulated to the lack of residue in the silencer, the parties questioned witnesses about the attachment mechanism for the silencer to a firearm, and the parties' argued those issues to the trial judge. Thus, the trial judge's exclusion of Defendant's Exhibit 1

6

did not have a substantial and injurious effect or influence in the trial judge's determination of her verdict. *Taylor*, 268 S.W.3d at 592. No reversible error is shown.

***State's Reply to Appellant's Second Point of Error***: Viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that appellant possessed or transported a firearms silencer. The evidence established that the police found a modified water bottle wrapped in black electrical tape in appellant's vehicle, along with a stolen firearm. Police recognized the modified water bottle as a homemade silencer and determined that it fit the stolen firearm. The trial judge found this evidence compelling. Both Officer Chopin and Detective Smith had extensive experience and training with firearms and opined, without objection, that SX70 was a prohibited firearm silencer. They reviewed the item and explained how it was made with multiple water bottles to create chambers, a system known as a baffle system in a firearms silencer.

Appellant contends that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt given the evidence he presented. Yet, the introduction of conflicting evidence is not enough to render the evidence insufficient, especially given the trial judge's credibility determinations in this case. *Turro*, 867 S.W.2d at 47. Appellant testified that SX70 was a

7

homemade water rocket. The trial judge found appellant's "testimony [was] not credible at all." (RR III: 148). The trial judge further found, within her province as fact-finder, that Officer Chopin and Detective Smith presented credible testimony that SX70 was a homemade silencer designed to muffle the sound of a gun as prohibited by the Penal Code. (RR II: 222). The appellate court must defer to these credibility determinations in its legal sufficiency analysis. *Cain,* 958 S.W.2d at 408-09. The evidence was therefore legally sufficient to sustain appellant's conviction for possession of a prohibited weapon, and appellant's second point of error is without merit.

## STATEMENT OF FACTS FROM GUILT/INNOCENCE

**Theft of a Firearm**

Austin Police Officer Brent Pardinek responded to appellant's call of a burglary at a residence on October 3, 2013. (RR II: 17-19). Appellant told Pardinek that he was housesitting for a friend, Polly Shrewsbury, and that the house had been broken into but nothing was missing. (RR II: 19). It seemed odd to Pardinek that someone would break into the residence but not steal any items, especially when a big flat screen television was in the house. (RR II: 21).

Polly Shrewsbury testified that she gave appellant a key to her home, but he was not actually housesitting for her. (RR II: 23). Appellant called Shrewsbury, who was out town for work, on October 3rd and told her about the burglary at her house. (RR II: 23). Shrewsbury told appellant to make a police report of the burglary even though nothing appeared to be missing. (RR II: 24). After Shrewsbury returned home from her trip, she and appellant checked the house. Appellant volunteered that her gun had not been stolen because the gun case was still in the house. (RR II: 25). He also specifically asked Shrewsbury whether any of her jewelry was missing. (RR II: 25). Shrewsbury thought appellant's "unsolicited" comments and questions were weird. (RR II: 25). Within a day,

Shrewsbury discovered that her firearm[3] and some jewelry were actually missing from her home. (RR II: 24).

**Burglary of a Habitation**

On October 7, 2013, about 7:30 a.m. Katherine Miller received a phone call from appellant, her friend, while she was in rush hour traffic. (RR II: 42, 44). Appellant wanted to know if Miller was at home and, since she was not, when would she be home. (RR II: 46). Appellant told Miller that the fire marshal from Bell County was going to call her because "some stuff went down."[4] (RR II: 46). Appellant needed Miller to tell the fire marshal that he had slept on her couch and left her apartment early that morning. (RR II: 46).

When Miller returned to her apartment hours later, she noticed a few things had been disturbed, but nothing significant that concerned her. (RR II: 48). Miller thought appellant might have come over, so she called him, but he denied having been in their apartment. (RR II: 59). She then discovered that someone had used her shower, bath towel, and toilet, but, again, she was not concerned because it

---

[3] The firearm was a 9 mm Sig Sauer P226, serial number U601035. (RR II: 26-27; SX4).

[4] Bell County Fire Marshall Steve Casey responded to a fire in Bell County on October 7, 2013. (RR II: 28). The fire was at the home of Omer Lozo, appellant's soon-to-be ex-father-in-law. (RR II: 29). Casey developed appellant as a suspect in the fire, and he called appellant that morning of the fire. (RR II: 30). Casey left a message for appellant that he was the Fire Marshall and that he was calling about the fire. (RR II: 30). As an investigative technique, Casey did not inform appellant of the address of the fire or whose house was on fire. (RR II: 30). Yet, appellant appeared at Lozo's house about an hour later. (RR II: 30).

could have been her roommate, Melissa Myer. (RR II: 48-49). When Myer returned home, she noticed a chip in their front door near the lock. (RR II: 73). She and Miller also discovered that Myer's laptop was missing. (RR II: 56). At that point, the two women realized someone had broken into their apartment. (RR II: 57).

Miller went to work, and Myer called the police to report the burglary. (RR II: 59, 74). Myer had LoJack, anti-theft software, on her laptop that worked by tracing a computer whenever it was connected to the Internet. (RR II: 74). Myer searched for her LoJack paperwork in her closet and found a black backpack (SX30) that she did not recognize. (RR II: 75). The backpack was hidden behind her clothing and shoved between two boxes. (RR II: 82). Myer opened the backpack and found a plastic mask, duct tape, and a handgun in it. (RR II: 75). Myer dropped everything and immediately called the police; she was hysterical. (RR II: 76).

Austin police officer Andrew Vera responded to Myer's call. He seized a Sig Sauer firearm[5] from the backpack and removed a live round in the chamber and the magazine from the weapon. (RR II: 91). The backpack also contained .243 caliber rifle founds, a Scream mask, part of a Barnett crossbow and string, a

---

[5] The firearm bore the serial number U601035, establishing that it was Shrewsbury's stolen firearm. (RR II: 91).

Lambert's black baseball cap, broken pieces of a spark plug used to quietly break windows, plastic zip ties, steel cable zip ties, bolt cutters, electrical tape, a multi-tool, and a key to a Cadillac vehicle that was never found. (RR II: 92-94, 108).

Myer called Miller about the backpack. Since Myer was hysterical, Miller called appellant and asked him to stay with Myer until her boyfriend arrived. (RR II: 61). Appellant advised Miller to not tell the police about the gun in the backpack because she would be "liable." (RR II: 61-62).

The next morning, appellant went uninvited to the women's apartment. (RR II: 63). He peppered Miller with questions about the break-in, the backpack, the gun, the laptop, and her roommate. (RR II: 64). Appellant wanted to know about Myer's LoJack anti-theft software on her laptop and what the police had said. (RR II: 64-65). Appellant also discussed the LoJack software with Myer. He acted concerned about her computer, wanted to know how the software worked, and if it could be disabled. (RR II: 77-78).

On October 9, 2013, Myer found her laptop for sale on Craigslist. (RR II: 66). The listing contained a phone number but no name, and Myer gave the phone number to police. (RR II: 77, 78). Austin Police Detective David Smith called the number, spoke with someone named "Tom," and ostensibly arranged to purchase the laptop. (RR II: 130). The phone number was familiar to Myer so she compared it to her contacts list on her cell phone. (RR II: 77). The phone number

12

belonged to appellant.  (RR II: 77, 78).  Myer was surprised and terrified.  (RR II: 78).

Officer Vera arrested appellant at the women's apartment.  (RR II: 68, 100). Appellant waived his rights and agreed to speak with police.  (RR II: 131; SX71). Appellant told police various stories about the burglary and tried to blame other persons.  (RR II: 133).  Appellant initially claimed that he went by the women's apartment to use the bathroom.  He stated that he left the backpack with the firearm in the closet because he was going to his son's school and could not take a firearm on campus.  (RR II: 133).  Appellant referred to the backpack as "the murder kit" or "the kill backpack."  (RR II: 133-134).  He admitted that he did not have permission to take Myer's laptop.  (RR II: 136).  Police recovered her laptop from appellant's locker at Life Time Fitness.  (RR II: 138).

Although Detective Smith asked appellant about the burglary at Myer's and Miller's apartment, appellant began discussing the burglary at Shrewsbury's home. (RR II: 134).  Appellant eventually admitted that his report of the burglary at Shrewsbury's house was false.  (RR II: 134-135).  He claimed he took Shrewsbury's firearm because he didn't feel safe, but then he admitted he wanted to shoot it, so he took it.  (RR II: 134).  He knew he did not have permission to take that weapon.  (RR II: 135).

**The Prohibited Weapon: the Firearm Silencer**

Police processed appellant's vehicle for evidence in the apartment complex parking lot. (RR II: 103). In the rear cargo compartment of appellant's vehicle, police found another Barnett crossbow and string, an arrow, a modified water bottle wrapped with black electrical tape, and a knife. (RR II: 103, 105-106, 108-109; SX58, 60). Police also found a firearm, a .22 Ruger (SX61) with two magazines on the rear passenger's side floorboard.[6] (RR II: 106, 139; SX62). The magazines contained ten cartridges each. (RR II: 106; SX65).

Austin police officer Adrian Chopin assisted in the search of appellant's vehicle. (RR II: 118). Officer Chopin had training specifically in regard to firearms, weapons, and silencers through his job as a police officer and as a federal firearms licensee with the ATF. (RR II: 112-113). When he saw the taped water bottle, Officer Chopin recognized it as a firearm suppressor.[7] (RR II: 119; SX70).

---

[6] Police determined the firearm had been stolen out of Hays County. (RR II: 139). Appellant's high school friend, Jimmy Locke, testified that the .22 Ruger found in appellant's car was his gun. (RR II: 210). In October Locke's wife discovered that the gun had been stolen. (RR II: 210).

[7] He explained that a firearms silencer worked by containing explosive gas and allowing it to release more slowly, making the silencer quiet. (RR II: 113). Silencers could be made using anything that fit on the end of the barrel of a gun, such as a water bottle, PVC tube, and even a bored out potato. (RR II: 113-114). If using a plastic water bottle, Officer Chopin explained that the bottle is literally duct taped to the end of a gun to act as a chamber in which the gas would expand. (RR II: 114, 116). A silencer could be made in a more intricate manner by stacking water bottles, a method known as a baffle system. (RR II: 114). Officer Chopin noted there were thousands of YouTube videos on the Internet demonstrating how homemade silencers cut the noise of a firearm. (RR II: 116-117).

14

He described SX70, the silencer in this case. The silencer consisted of two SmartWater labelled water bottles, with one cut and placed inside the other like a baffle system. (RR II: 120). There was a hole in the silencer that closely matched the .22 Ruger pistol police found in appellant's vehicle. (RR II: 120, 123; SX61). Based on his training, experience, and knowledge, Officer Chopin opined that SX70 was a device made, designed, or adapted to muffle the report of a firearm, i.e. a firearm silencer. (RR II: 123). State's exhibit 70 was not a legal firearm silencer because it was not registered with the ATF. (RR II: 122).

Detective Smith also had substantial experience with firearm suppressors as a firearms instructor for the police department and as a competitive shooter. (RR II: 139). After he found appellant's homemade silencer, Detective Smith conducted several online searches on homemade suppressors. (RR II: 139). He found the exact construction of appellant's suppressor multiple times in online searches. (RR II: 139). Detective Smith compared the appellant's homemade silencer (SX70) with the .22 Ruger found in appellant's vehicle by placing them side by side. (RR II: 140; SX76). He also placed the silencer over the barrel of the Ruger, determined that it fit, and photographed it. (RR II: 140-141; SX77).

Detective Smith further examined how SX70 had been made and revealed that appellant had taken multiple water bottles and inserted them over each other. (RR II: 142-143; SX79). This overlap system created multiple chambers into

15

which the gas from a fired firearm could escape and muffle the sound. (RR II: 143). Based on his expertise, Detective Smith testified that SX70 was a device designed, made, or adapted to muffle the report of a firearm and was, thus, a prohibited firearms silencer under the Penal Code. (RR II: 143).

**Appellant's Defensive Evidence**

Appellant testified in his defense. He admitted that he made SX70 after watching a video on MythBusters. (RR II: 166). He claimed it was a plastic water rocket for shooting a cork, and one of many projects he did with his children. (RR II: 166). He denied using it as a silencer for a gun. (RR II: 166-167). Yet, when the police searched appellant's vehicle, they did not found a cork, water hose, single Coke bottle, or clamp as needed to make the alleged plastic water rocket. (RR II: 176-177). Detective Smith also noted that appellant did not offer the water hose or cork as an explanation for SX70 in his interview with police. (RR II: 150).

**The Verdict**

The trial judge reviewed all the testimony, exhibits, and counsel's arguments before announcing her verdict. (RR II: 222). The trial judge found that, as firearms experts, both Officer Chopin and Detective Smith presented credible testimony that SX70 was a homemade silencer that, under the Penal Code, would be used to muffle the sound of a gun. (RR II: 222). The trial judge also found compelling evidence that the silencer actually fit the gun found in appellant's

16

vehicle. (RR II: 222). Finally, the trial judge examined the homemade silencer and found that there were at least two chambers in the bottle, which testimony had established were needed to muffle the weapon. (RR II: 222). Consequently, the trial judge found appellant guilty of possession of a prohibited weapon as described in the indictment. (RR II: 222).

## STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR

**Appellant failed to preserve any alleged error for review because he did not make an offer of proof and his argument on appeal differs from his trial arguments. Additionally, the trial judge did not abuse her discretion in excluding Defendant's Exhibit 1 because it was inadmissible hearsay. Finally, any alleged error was harmless because the same evidence was admitted through other sources.**

In his first point of error, appellant contends the trial court erred in sustaining the State's hearsay objection to Defendant's Exhibit 1, a crime lab report. Appellant argues in his brief that the report was not hearsay because it qualified as an admission by a party opponent under Tex.R.Evid. 801(e)(2). Appellant further argues that the trial court erred in relying on *Crawford v. Washington*, 541 U.S. 36 (2004), in her ruling. Lastly, appellant contends the crime lab report was admissible because the State provided it to him in discovery.

**Relevant Facts**

On cross-examination of Officer Chopin, appellant established that Chopin was familiar with crime lab reports. (RR II: 124). But, Officer Chopin was not

aware that the homemade silencer in this case had been submitted to the Austin Police Department crime lab for examination. (RR II: 123). Appellant handed Officer Chopin an unidentified report from the crime lab and asked him to read it. (RR II: 124). The State objected that the report was hearsay and had not been prepared by Officer Chopin. (RR II: 124). The trial judge sustained the State's objection. (RR II: 124).

Appellant then offered "Exhibit 1" as "a crime lab report on the so-called silencer that's been presented." (RR II: 124). The State again objected that the report was hearsay and that the individual who prepared the report was not present to testify. (RR II: 124). The State was willing to stipulate that the item tested negative for the presence of lead within the item. (RR II: 124). Appellant responded that the report was submitted "as a part of the exhibits for this case, and it is a crime lab report with regard to an alleged prohibited weapon." (RR II: 125). The trial judge noted that the fact that the State provided the report in discovery did not necessarily make it admissible. (RR II: 125). The trial judge ruled the report was inadmissible under *Crawford* and was hearsay. (RR II: 125). Consequently, the trial judge sustained the State's objection. (RR II: 125).

During his cross-examination of Detective Smith, appellant confirmed that Smith had seen the crime lab report. (RR II: 146). When appellant asked Detective Smith for the contents of the report, the State again objected on hearsay

18

grounds.[8] (RR II: 146). The trial judge sustained the State's objection. (RR II: 146). The appellant did not offer the report into evidence.

**Preservation of Error**

### 1. Offer of Proof

Appellant acknowledges in his brief that he failed to make an offer of proof as required by Tex.R.Evid. 103(a)(2). This rule limits the scope of issues that may be appealed when evidence is limited or excluded. *Holmes v. State*, 323 S.W.3d 163, 168 (Tex.Crim.App. 2009). Per this rule, "[e]rror may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer, or was apparent from the context within questions were asked." *Id.* An offer of proof may be in question-and-answer form or in the form of a concise statement by counsel. *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App. 1998). If done in the form of a concise statement, counsel must summarize the evidence offered and include a statement of the relevance of the evidence, unless the relevance is apparent, so that the trial court can determine whether the evidence is admissible. *Warner*, 969 S.W.2d at 2.

---

[8] In fact, appellant twice asked witnesses to read from the crime lab report even though he had not offered it into evidence at either specific time. *See* (RR II: 124, 146). Appellant does not complain on appeal that the trial judge erred in not allowing Officer Chopin or Detective Smith to testify to or read the contents of the document. *See e.g. Garrett v. State*, 998 S.W.2d 307, 318 (Tex.App. – Texarkana 1999, pet.ref'd. untimely filed) (trial court did not abuse its discretion in not allowing defendant to read from documents not in evidence).

19

Appellant claims that he met his burden of preserving the record because the proffered exhibit is in the appellate record. Yet, when he offered the exhibit into evidence, appellant did not inform the trial court of the substance of the report, summarize the contents of the report, or explain its relevance. Appellant only proffered that it was a crime lab report with regard to the alleged silencer. The State submits that the limited statements and exchanges in the record were insufficient to constitute an offer of proof under Rule 103(a)(2), and, therefore, appellant has failed to preserve alleged error for review on the trial court's exclusion of Defendant's Exhibit 1.

## 2. Trial Objection Differs from Argument on Appeal

To preserve error for appellate review the complaining party must make a timely objection specifying the grounds for the objection if the grounds are not apparent from the context. Tex.R.App.Proc. 33.1. Additionally, to preserve error, the complaining party must obtain an adverse ruling from the trial court, and the issue on appeal must correspond to the objection made at trial. *See* Rule 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002).

Appellant argues on appeal that the trial court erred in excluding Defendant's Exhibit 1 because it qualified as an admission by a party opponent under Tex.R.Evid. 801(e)(2) and was not hearsay. Appellant did not make that argument in the trial court. Nor did he challenge the trial court's application of

20

*Crawford.* Appellant therefore presents no alleged error for review on these grounds because his arguments on appeal differ from his arguments in the trial court. Tex.R.App.Proc. 33.1; *Rezac v. State*, 782 S.W.2d 869 (Tex.Crim.App. 1990) (where the objection at trial differs from the argument on appeal, no error is presented for appellate review).

**Trial Court's Ruling Excluding Evidence**

Appellant's only claim on appeal that comports with his trial objection is his argument that the lab report was admissible because it was provided during discovery. Appellant cites no authority for this proposition. *Cf. Ex parte Miles*, 359 S.W.3d 647, 669 (Tex.Crim.App. 2012) (defendant must show evidence was admissible to support his *Brady* claim).

### 1. Standard of Review

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martin v. State*, 173 S.W.3d 463, 467 (Tex.Crim.App. 2005). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1991) (opinion on rehearing). An abuse of discretion occurs if the court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008).

The trial judge did not abuse her discretion in sustaining the State's hearsay objection to Defendant's Exhibit 1. (RR II: 125). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R.Evid. 801(d); *Pena v. State*, 353 S.W.3d 797, 814 (Tex.Crim.App. 2011). Defendant's Exhibit 1 was an out-of-court statement that appellant offered for the truth of the matters contained therein. This statement was not prepared by Officer Chopin, the witness through whom appellant offered it into evidence. In fact, Officer Chopin did not know that the homemade silencer in this case had been submitted to the crime lab for testing. Appellant did not attempt to establish the admissibility of the crime lab report under any exception to the hearsay rule. The trial judge correctly sustained the State's hearsay objection.

## 2. No Reversible Error

Assuming appellant preserved any alleged error for review, he fails to show that such error was reversible.

The appellate court disregards non-constitutional errors that do not affect a criminal defendant's substantial rights. Tex.R.App.Proc. 44.2(b). Under this standard, an error is reversible only when it had a substantial and injurious effect or influence in determining the factfinder's verdict. *Taylor*, 268 S.W.3d at 592. No

22

reversible error is shown when other such evidence is admitted at trial. *Halprin v. State*, 170 S.W.3d 111, 116 (Tex.Crim.App. 2005).

The contents of the excluded lab report were admitted through other evidence and argued by the parties. The excluded lab report reflected that Defendant's Exhibit 1 had "design characteristics consistent with a firearm silencer, however, it lack[ed] a method of attachment to a firearm and tested negative for the presence of lead, a key component in gunshot residues." (RR IV: 216;DX1). The State told the trial judge, the trier of fact in this case, that it would stipulate that there was a "negative presence of lead within that particular item[.]" (RR II: 124). Then, appellant questioned both Officer Chopin and Detective Smith without objection on how the homemade silencer would hold a gun or how the weapon would be fitted to the silencer. *See* (RR II: 125-127, 145). Appellant also established that Detective Smith did not think SX70 had actually been used as a silencer. (RR II: 146-147). In its redirect examination, the State queried Officer Chopin on methods of attaching a weapon to a silencer and established that black duct tape or electrical tape would work. (RR II: 127).

Appellant argued to the court that he had never used SX70 as a gun silencer and it appeared that it would fall apart if so used. (RR II: 218). The State addressed the attachment mechanism in its argument to the court and noted that the tape found in the backpack could be used. (RR II: 221). The State also noted that

the homemade silencer fit the notched end of the barrel of the firearm found in appellant's vehicle. (RR II: 221). Finally, the State argued that the lack of lead residue in the silencer only indicated that appellant had not yet used it. (RR II: 221).

Thus, the trial judge had before her evidence regarding the lack of residue and the attachment mechanism and the parties' arguments regarding those issues. Thus, the trial judge's exclusion of Defendant's Exhibit 1 did not have a substantial and injurious effect or influence in the trial judge's determination of her verdict. *Taylor*, 268 S.W.3d at 592. No reversible error is shown.

Appellant's first point of error should be overruled.

## STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR

**The evidence was legally sufficient to establish beyond a reasonable doubt that appellant possessed a prohibited weapon as alleged in the indictment.**

**Standard of Review**

In determining whether the evidence is sufficient to support a conviction, an appellate court must review the evidence in the light most favorable to the verdict by asking whether any rational trier of fact could have found the appellant guilty of the elements of the crime beyond a reasonable doubt. *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). This familiar standard gives full play to the responsibility of the trier of fact to

24

fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson v. Virginia,* 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

While evidence presented at trial may offer conflicting accounts, the introduction of conflicting evidence is not enough to render the evidence insufficient as a whole. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App. 1993). It is within the province of the fact-finder to judge the weight and credibility to be accorded witness testimony, and the appellate court must defer to the trial judge's determination concerning what weight to give contradictory testimonial evidence. *See Cain v. State,* 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997); *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App. 1982). The trier of fact, not the appellate court, determines whether to accept or reject any or all of a witness's testimony. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). The appellate court's duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in the light most favorable to the

verdict. *Adelman,* 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843.

**Application of Law to Facts**

The State alleged in the indictment that appellant intentionally or knowingly possessed or transported a prohibited weapon, a firearm silencer, in violation of Penal Code §46.05(a)(4). (CR 12). Viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that appellant possessed or transported a firearms silencer. The evidence showed that the police found a modified water bottle wrapped in black electrical tape in appellant's vehicle. (RR II: 105-106; SX60). From his training with firearms, weapons, and silencers, Officer Chopin immediately recognized the item as a firearms suppressor. (RR II: 119). Both Officer Chopin and Detective Smith reviewed the item and explained how it was made with multiple water bottles to create chambers, a system known as a baffle system in a firearms silencer. (RR II: 120). Both officers had extensive experience and training with firearms and opined, without objection, that SX70 was a prohibited firearm silencer. Furthermore, the trial judge found it compelling that SX70, the homemade silencer, fit the stolen firearm that was found in appellant's vehicle along with it.

26

Appellant contends that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt given the evidence he presented. Yet, the introduction of conflicting evidence is not enough to render the evidence insufficient, especially given the trial judge's credibility determinations in this case. *Turro*, 867 S.W.2d at 47. Appellant testified that SX70 was a homemade water rocket. The trial judge found appellant's "testimony [was] not credible at all." (RR III: 148).[9] The trial judge further found, within her province as fact-finder, that Officer Chopin and Detective Smith presented credible testimony that SX70 was a homemade silencer designed to muffle the sound of a gun as prohibited by the Penal Code. (RR II: 222). The appellate court must defer to these credibility determinations in its legal sufficiency analysis. *Cain,* 958 S.W.2d at 408-09. The evidence was therefore legally sufficient to sustain appellant's conviction for possession of a prohibited weapon, and appellant's second point of error is without merit.

Appellant also argues that Officer Chopin and Detective Smith were not qualified to testify as expert witnesses because of their reliance on Wikipedia as source material. He contends that their testimony was therefore not admissible. Appellant's arguments are wholly without merit, as the record from

---

[9] The trial judge made this pronouncement at sentencing, but after noting that appellant had testified at both phases of trial. (RR III: 148).

guilt/innocence reflects that both Officer Chopin and Detective Smith testified based on their experience and training, not Wikipedia. Although Wikipedia was mentioned in the affidavit for the arrest warrant (CR 6), the affidavit was not evidence in this trial. And, assuming the officers' testimony was inadmissible, their testimony is properly considered by the appellate court in its legal sufficiency analysis. *Soliz v. State*, 432 S.W.3d 895, 900 (Tex.Crim.App. 2014), *cert.denied*, 135 S.Ct. 1154 (2015) (appellate court considers even inadmissible evidence when reviewing sufficiency of the evidence).

Appellant's arguments are wholly without merit, and his second point of error should be overruled in its entirety.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays this Court to overrule the appellant's points of error and to affirm the trial court's judgment.

Respectfully submitted,

ROSEMARY LEHMBERG
District Attorney
Travis County, Texas


*/s/ Lisa Stewart*
Lisa Stewart
Assistant District Attorney
State Bar No. 06022700
P.O. Box 1748
Austin, Texas 78767
Lisa.Stewart@traviscountytx.gov
AppellateTCDA@traviscountytx.gov
(512) 854-9400
Fax No. 854-4810


## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(2)(A), the State certifies that the length of this brief is 4,881 words. The State also certifies, pursuant to Texas Rule of Appellate Procedure 9.4(e), a conventional typeface 14-point was used to generate this brief.

*/s/ Lisa Stewart*
Lisa Stewart
Assistant District Attorney

29

## CERTIFICATE OF SERVICE

This is to certify that the above State's brief has served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the appellant's attorney, Cherie A. Ballard, Ballard & Mullowney, P.C., 900 RR 620 S, Suite C101-205, Austin, Texas 78734, cherieballard@austin.rr.com on this 23rd day of September, 2015.

/s/ Lisa Stewart
Lisa Stewart
Assistant District Attorney